Virginia Williams and James Williams, Appellees, v.
Eileen Walsh, Appellant.

Gen. No. 9,713.

Heard in this court at the October term, 1950. Opinion filed November 2, 1950. Rehearing denied January 3, 1951. Released for publication January 3, 1951.

EARL S. HODGES and KENNETH H. LEMMER, both of Springfield, for appellant; MAURICE KEPNER, of Springfield, of counsel.

JENKINS, OLSEN & CANTRILL, of Springfield, for appellees; HERBERT L. CANTRILL and PAUL E. RUPPEL, both of Springfield, of counsel.

MR. JUSTICE DADY delivered the opinion of the court.
This is an appeal by Eileen Walsh, defendant, from judgments entered against her on verdicts in favor of plaintiffs James Williams and Virginia Williams, his wife, in the sums of $3,000 and $9,000, respectively.

This suit results from an automobile accident which occurred on October 17, 1948, shortly after 9:00 p. m.

Testimony for the plaintiffs was to the effect that Mrs. Williams was a guest passenger in her husband's automobile, which was proceeding east on Route 125, a 20-foot paved highway, about 6½ miles west of Springfield, Illinois; that the Williams car was traveling about 50 miles per hour, with its bright lights on; that Eileen Walsh, driving west on the same highway, was first seen by James Williams when he came over the crest of a hill and the cars were about 200 feet apart; that the Walsh automobile was then partially in the eastbound lane of travel; that Williams then dimmed his lights and began to slow down; that the Walsh car swerved to its right and ''seemed to go off the road'' and then came back to its left across the road and struck the Williams car on its left side; that Williams applied his brakes hard when defendant turned to her left and started to head toward the Williams car, and that skid marks, glass, oil, and dirt on the highway indicated the impact occurred in the eastbound lane of travel.

Defendant's testimony was to the effect that she saw the Williams car coming at a high speed; that she was blinded by its lights and turned to her right; that the right wheels of her car left the road, and the impact then occurred; and that she didn't know whether or not, in getting back on to the road, the left front of her car went across the center line.

As a result of the accident, Mrs. Williams suffered a fractured pelvis, facial wounds, and shock. She was hospitalized until January 13, 1949. At the time of the accident she was employed, and returned to such employment on March 1, 1949. She testified that since the accident she has not been without pain.

On April 26, 1949, an examination of her spinal column was made by Dr. Shriner, her attending physician. He testified that on such examination he found a deviation or curvature of her spinal column of one-half inch from center. He further testified that on October 12, 1949, he made another examination of her spinal column and then found a deviation of approximately one inch. The defendant offered no medical testimony.

Doctor Shriner testified that on the night of the accident he made a complete examination and took x-rays of plaintiff, and found her in severe pain associated with the bones of her pelvis, but at that time found no injury to her back or spine; that he "followed this case until she left the hospital on January 17, 1949, but had no occasion during that period to have raised the question of the condition of her back"; that from January 17 until April 26, 1949, he did not attend her; that on April 26 he made a detailed examination of her spinal column, and took the first x-ray of her back, and that "as far as this patient's injuries to her pelvis are concerned she had a perfectly normal and complete recovery with no displacements," but that there is a tilt to the sacrum.

The doctor then testified that on his examination of April 26 he found that the patient had a deviation of the spine of approximately one-half inch off center, a curvature of the spine; that he was unable to tell whether or not such deviation was the cause of pain, but it could have been; that on October 12, 1949, he took additional x-rays and again made a detailed examination of her spine, and found the deviation of the spine had increased another half inch, and there was a slight tilt of the pelvis; that he was unable to say which occurred first,—whether the deviation occurred

546

and the pelvis was tilted, or the pelvis was tilted and the deviation followed; that from such examination and treatment of her it was his opinion, based upon reasonable medical certainty, that there probably was a relationship and connection between the condition he so found and the accident in question.

When Doctor Shriner first began to testify as to such curvature of the spine, the defendant objected to such curvature being shown "unless there is positive connection between that and the alleged occurrence." Such objection was overruled.

Before cross examination of the doctor the defendant moved that the entire testimony of the doctor in relation to x-rays pertaining to the back, and all evidence pertaining to the condition of the back, be stricken as having no connection with the alleged accident, which motion was denied.

On cross examination the doctor testified that it was more probable that the curvature of the spine was the result of the injury.

The defendant contends that the court erred in overruling such objection and in denying such motion.

■■ In *Lauth v. Chicago Union Traction Co.*, 244 Ill. 244, 251, the court said: "In this class of cases, in estimating the pecuniary loss, all the consequences of the injury, future as well as past, which are shown by the evidence to be reasonably certain to result from the injury, are to be taken into consideration. . . . To form a proper basis for recovery, however, it is necessary that the consequences relied on must be reasonably certain to result. They cannot be purely speculative."

In *City of Chicago v. Bork*, 227 Ill. 60, 64, the court held there was no error in permitting a medical expert to give his opinion of the probable cause of the dis-

ordered physical condition from which the evidence showed the plaintiff was suffering.

Webster's New International Dictionary defines the word "probable" as "(1) Having more evidence for than against; supported by evidence strong enough to establish presumption, but not proof, of its truth; . . . (3) Likely to be or become true or real; such as logically or actually may be or may happen; reasonably, but not certainly, to be believed or expected. . . ."

In *Illinois Cent. R. Co. v. Treat,* 179 Ill. 576, the court held that it was not error to permit medical witnesses to testify the plaintiff might have received the injuries which they found, on examination, she suffered from, by the fall she described. (See *Chicago City Ry. Co. v. Foster,* 226 Ill. 288; *West Chicago St. R. Co. v. Dougherty,* 209 Ill. 241.)

In *Fellows-Kimbrough v. Chicago City Ry. Co.,* 272 Ill. 71, 77, the court said: "A physician may be asked whether the facts stated in a hypothetical question are sufficient, from a medical or surgical point of view, to cause and bring about a certain condition or malady, or he may be asked whether or not a given condition or malady of a person may or could result from and be caused by the facts stated in the hypothetical question, but he should not be asked whether or not such facts did cause and bring about such condition or malady." (See *Squire-Dingee Co. v. Industrial Board,* 281 Ill. 359.)

█ It is our opinion that the plaintiff was not required to show that there was a "positive connection" between the curvature of her spine and the accident in question. It is also our opinion that such testimony of Doctor Shriner was not purely speculative, or a mere surmise, guess or conjecture, but was based on facts and conditions observed by him. The weight

and credibility of such testimony was a question for the jury. Therefore we hold there was no error in overruling such objection and no error in denying such motion.

 Defendant next contends that in any event the allegations of the complaint did not justify the admission of the evidence of back or spinal injury. It is not necessary to determine whether or not there was a variance between the pleadings and proof. Such question was not raised in the trial court and was, therefore, waived. (*Jacobs v. Marks,* 183 Ill. 533, 536; *Dudleston v. City of Chicago Heights,* 175 Ill. App. 551, 552.)

Defendant contends the court erred in refusing to give defendant's tendered instructions numbers 17, 11 and 7. Refused instruction 17 merely quoted the provisions of the Motor Vehicle Act (sec. 111, par. 208, ch. 95½, 1949 Ill. Rev. Stat. [Jones Ill. Stats. Ann. 85.240]) which required the driver of a vehicle approaching another vehicle proceeding in the opposite direction to dim or drop his headlights when within not less than three hundred fifty feet of such other vehicle.

 No cases are cited by defendant to the effect that failure to give an instruction in the words of the statute, which in effect is purely an abstract statement of law, is error. In view of the evidence and the other instructions, it is our opinion that instruction 17 might have had a tendency to mislead the jury and that the refusal to give it was not error. (See *Moran v. Gatz,* 327 Ill. App. 480, 483; *People v. Isbell,* 363 Ill. 264, 268.)

 Refused instruction 7 dealt with matters which a jury could consider in determining whether or not a plaintiff was guilty of contributory negligence. Re-

fused instruction 11 defined the duties of a guest passenger and then stated if "either plaintiff at the time of and immediately prior to the accident in question omitted to take such reasonable and prudent precautions to avoid danger in his or her behalf as an ordinarily careful and prudent person would have taken under the same or similar circumstances and that such omission, if any, proximately contributed to cause his or her injuries, then under such circumstances such plaintiff cannot recover against the defendant." The given instructions in this case properly defined contributory negligence, informed the jury that each plaintiff had to prove by a preponderance or greater weight of the evidence that he or she was not guilty of such contributory negligence, and that if any plaintiff failed to so prove such freedom from contributory negligence, he or she could not recover. "The object of instructing the jury is to inform them as to the rules of law applicable to the case, and when a rule has once been stated correctly it is not necessary to repeat it." (*People v. Looney,* 324 Ill. 375, 403.) We hold that the jury was adequately instructed in this case and that, even if instructions 7 and 11 properly could have been given, the failure to do so was not prejudicial error.

Defendant contends that both plaintiffs were guilty of contributory negligence as a matter of law. It is fundamental that, in determining whether or not a plaintiff is guilty of contributory negligence as a matter of law, only the uncontradicted facts and evidence favorable to such plaintiff can be considered. (*Pienta v. Chicago City Ry. Co.,* 284 Ill. 246, 252; *Thomas v. Buchanan,* 357 Ill. 270, 277.) The question is one for a jury unless, under such facts and evidence, plaintiff's conduct "was so clearly and palpably neg-

ligent that all reasonable minds would agree that he did not exercise that degree of care and caution that a reasonable, ordinary and prudent person would exercise under the same circumstances." (*Wedig v. Kroger Grocery & Baking Co.*, 282 Ill. App. 370, 374.) Defendant contends as to James Williams that since he did not apply his brakes immediately upon seeing defendant and failed to turn to the right, he did not exercise due care and caution for his safety. The evidence most favorable to him tends to show he dimmed his lights immediately upon seeing defendant about 200 feet away, slowed his car and, when defendant started to head for him, applied his brakes. Under such circumstances we cannot properly say that he was guilty of contributory negligence as a matter of law.

It is argued that plaintiff, Virginia Williams, as a passenger, had an affirmative duty to warn her driver of approaching danger and, having failed so to do, may not recover. Whether a failure to warn is negligence depends upon the circumstances. (*Lasko v. Meier*, 394 Ill. 71, 79.)

 We hold that, in the instant case, it was for the jury to determine whether or not a warning was required from Virginia Williams and whether such failure to warn proximately contributed to bring about her injuries. (*Chapman v. Baltimore & O. R. Co.*, 340 Ill. App. 475, 501.)

There being no reversible error, the judgment of the trial court is affirmed.

*Affirmed.*