Paul Sourian, Helen Adams, Aileen C. Schulman, Charlotte Pena and Betty Bentz, Plaintiffs, v. Ernest Jones, Defendant.
Aileen C. Schulman and Betty Bentz, Certain Plaintiffs-Appellees, v. Ernest Jones, Defendant-Appellant.

Gen. Nos. 45,972, 45,973.

Opinion filed May 28, 1953. Rehearing denied June 24, 1953. Released for publication June 24, 1953.

VOGEL & BUNGE, and PETRUCELLI, O'BRIEN, SIMON & MULLEN, all of Chicago, for appellant; L. H. VOGEL, R. C. VOGEL, GEORGE C. BUNGE, and RALPH MILLER, all of Chicago, of counsel.

JOSEPH D. RYAN, LOUIS P. MILLER, and T. JAY SULLIVAN, all of Chicago, for appellees.

MR. PRESIDING JUSTICE LEWE delivered the opinion of the court.

Plaintiffs Aileen C. Schulman and Betty Bentz instituted suits to recover damages for personal injuries resulting from a collision on February 19, 1950, between an automobile operated by defendant and an

automobile driven by Paul Sourian in which the plaintiffs were riding. Trial by jury resulted in separate verdicts in favor of Aileen C. Schulman and Betty Bentz in the sums of $4,000 and $20,000, respectively, and judgments were entered accordingly. Defendant's motions for new trials denied. Defendant appealed.

These suits were consolidated in this court. In each case liability is admitted. The only question presented at the trial was the nature and extent of the damages sustained by plaintiffs.

Defendant's main contention is that plaintiffs' expert medical testimony is not sufficient to establish causal connections between the accident and the subsequent conditions complained of.

Testimony relating to the claim of Aileen C. Schulman is substantially as follows. Since birth she had a birthmark or mole about the "size of a dime" on the left lower part of her back near the spine. In the summer of 1949 she scratched the birthmark, causing it to bleed. After being thrown out of Sourian's automobile in the accident February 19, 1950, Miss. Schulman went to Michael Reese Hospital in a taxicab accompanied by her sister Helen Adams who was also riding in the automobile at the time of the accident. At the hospital Miss Schulman was given some pills in the emergency ward but was not examined. As a result of the accident, she had bruises on both legs, her back and her hips and ached all over. On the day following the occurrence she visited a doctor who examined her, taped her back and gave her some pills to quiet her nerves. Thereafter she visited the same doctor three times within the following week. She was bandaged for about two weeks. At the time of the accident she was employed as a secretary at a monthly salary of $175. On the third day after the accident she returned to her employment but worked shorter hours until March 15 when she resigned. After her resignation she rested

for about a week and then secured another position doing secretarial work at a weekly salary of $45. She remained at this position for about a year and a half.

About the end of March 1950 she observed that the birthmark on her back changed color from a dark brown to a lighter cocoa brown, increased in thickness and became "like a wart." About this time she called on her family's physician to get "hay fever shots" at which time she told the physician about the thickening of the birthmark. Her physician examined the birthmark on three different occasions over a period of about one month and found at each successive examination that the birthmark had grown "a little bit" and that a group of "little warts" had appeared. At the suggestion of her physician Miss Schulman consulted a skin specialist who removed the wart and sent some of the tissues to a laboratory for examination. The clinical examination disclosed a pigmented malignant tumor known as melanosarcoma. Afterward, on August 15, 1950, Miss Schulman entered a hospital where she was operated on by Dr. Michael C. Govostis and another surgeon who removed a wide area of skin and underlying tissue. An examination in November 1950 revealed that the operation was successful and that the scar had completely healed.

In a hypothetical question propounded by plaintiff's counsel Dr. Govostis was asked whether he had an opinion to a reasonable degree of medical certainty, "whether the trauma or violence which I have described as having occurred on February 19, 1950, superadded to or in conjunction with the other symptoms and conditions which I have related to you in this question, was sufficient to cause the promotion of this melanosarcoma." Dr. Govostis replied, "I believe so, and, if so, I would like to qualify my answer here." Continuing, the Doctor stated, "The reason I say it is, in certain cases these nevi or these benign melanomas,

368

that if they are operated on inadequately or if they are stimulated by surgery or by any inflammation, that they become malignant subsequent to that."

Upon denial of defendant's motion to strike the foregoing testimony, Dr. Govostis further testified that, "It has been known over the ages that the tissues of birthmarks or tumors are more susceptible to becoming cancerous through repeated trauma. By trauma I mean bruising it, injury."

On cross-examination Dr. Govostis was asked whether in answering the hypothetical question he had taken into consideration the fact that the birthmark had been scratched and had bled in July or August 1949, six months before the accident. Dr. Govostis replied, "Yes, I believe that such an occurrence might or could have caused a melanosarcoma as that supposed injury on the occasion stated in the hypothetical question caused it. The scratching of a mole by a comb or fingernail or any other irritation a year before I saw this woman at the hospital might, with reasonable medical certainty, have caused a melanosarcoma as the occurrence to which my attention was directed in the hypothetical question."

On further cross-examination Dr. Govostis testified that it was not possible to make a complete statement as to what caused this mole or birthmark to develop into a melanosarcoma; that accidentally scratching such a mole with a fingernail, comb, or other substance "can stimulate it to become one. It could be the exciting cause."

Dr. Thomas C. Browning, a specialist in traumatic surgery called by defendant testified in substance, in response to hypothetical questions, that there could not have been any connection between the injuries such as were sustained by Miss Schulman in the accident on February 19, 1950 and the condition of her mole or birthmark discovered and developed after the accident.

As to the claim of Betty Bentz, the evidence discloses the following facts: At the time of the accident she was thirty-three years of age and employed as a clerk at a weekly salary of $42.50. In 1947 she went practically blind in her right eye and later recovered the use of her vision. About six months before the occurrence she started having difficulty in maintaining her equilibrium, she staggered and "kept going to the right." In November 1949 her condition worsened. She obtained a leave of absence from her employment and entered a hospital on January 2, 1950, where she was examined by Dr. Frederick Hiller who diagnosed her condition as multiple sclerosis. After treatment at the hospital she was discharged on January 20, 1950. At the suggestion of Dr. Hiller, Mrs. Bentz consulted a neighborhood physician who gave her injections every six days of neoarsphenamine. As a result of the collision she sustained bruises on her knees and lapsed into unconsciousness for about five minutes. About two weeks after the accident Mrs. Bentz called Dr. Hiller and told him about it. She was then having difficulty walking for the first time since her discharge from the hospital on January 20th. She also had trouble with her right hand. Dr. Hiller suggested that she re-enter the hospital, avoid emotional disturbances, and rest as much as possible. Instead she returned to work for a few days but had difficulty getting about and has not been engaged in gainful employment since.

Dr. Hiller testified in substance as follows: Multiple sclerosis is an organic disease of the nervous system the cause of which is unknown. It manifests itself in lesions in different places of the nervous system. It depends upon how often the lesions have occurred in a given area and how severe they have been whether the patient may recuperate. After many attacks paralysis results. Multiple sclerosis may be progressive in some cases. The record shows that on direct examination Dr.

Hiller was asked the following question: "Doctor, in your opinion to a reasonable degree of medical certainty do you believe that the trauma of which you received the history was sufficient to cause a precipitation of the symptoms which you have described as following it?" Over defendant's objection the witness answered in the affirmative.

On cross-examination Dr. Hiller testified that, "Trauma or injury can have this deleterious effect upon a person suffering from multiple sclerosis . . . The leading textbooks on neurology state the fact that there is at least a possibility that trauma precipitates attacks of multiple sclerosis. That is my opinion, that there is a possibility of such a connection."

Defendant moved to strike the testimony of Dr. Hiller on the ground that the possibility of the connection between the accident and the aggravation of Mrs. Bentz's pre-existing multiple sclerosis was speculative. This motion was denied.

Dr. Eric Oldberg, called in behalf of defendant, in answer to a hypothetical question gave as his opinion that there was not, and could not have been any connection between the traumatic injury sustained by Mrs. Bentz in the accident and the subsequent development of her pre-existing multiple sclerosis and that there is no known connection between that kind of occurrence and the inevitable progress of the disease from which Mrs. Bentz already suffered.

Defendant insists that because of the worsening condition of these plaintiffs' pre-existing ailments, positive medical testimony is necessary to establish the causal connection between the accident and the alleged disability.

The form of the hypothetical questions propounded by plaintiffs' counsel to Dr. Govostis and Dr. Hiller has been approved (See *Fellows-Kimbrough v. Chicago City R. Co.*, 272 Ill. 71; *Squire-Dingee Co. v.*

*Industrial Board,* 281 Ill. 359; *Williams v. Walsh,* 341 Ill. App. 543), and the affirmative answers to similar questions have been held, in the cases last cited, to create issues of fact which warranted their submission to the jury.

 In the recent case of *Lindroth v. Walgreen Co.,* 407 Ill. 121, at page 132, the court in adverting to *Lavender v. Kurn,* 327 U. S. 645, 90 L. Ed. 916, 66 S. Ct. 740, said:

"Whenever facts are in dispute or the evidence is such that fair-minded men may draw different inferences, a measure of speculation and conjecture is required on the part of those whose duty it is to settle the dispute by choosing what seems to them to be the most reasonable inference. Only when there is a complete absence of probative facts to support the conclusion reached does a reversible error appear."

 The rule is well settled that a verdict may not be set aside merely because the jury could have drawn different inferences or because judges feel that other conclusions than the one drawn would be more reasonable. (*Lindroth v. Walgreen Co.,* 407 Ill. 121.) And in *Tennant v. Peoria and Pekin Union Railway Co.,* 321 U. S. 29, also cited with approval in the *Lindroth* case, the court said:

"It is not the function of a court to search the record for conflicting circumstantial evidence in order to take the case away from the jury on a theory that the proof gives equal support to inconsistent and uncertain inferences."

 In the present case we think it is the province of the jury alone to determine the weight of the evidence and the credibility of the expert medical witnesses. We shall heed the often cited admonition of our Supreme Court in *People v. Hanisch,* 361 Ill. 465, p. 468:

"The utmost caution should be exercised not only by the trial courts but by the reviewing courts to uphold the sanctity of the trial by jury."

Defendant maintains that the verdict is against the manifest weight of the evidence. As heretofore indicated there is a sharp conflict in the testimony of the medical experts. The precise question was presented under somewhat similar circumstances in the case of *Behles v. Chicago Transit Authority*, 346 Ill. App. 220, where this court held that it was particularly within the province of the jury to decide this question. After a careful examination of the record we cannot say that the jury's verdict is against the manifest weight of the evidence.

Defendant says that plaintiffs' instructions 21, 22, 23 and 24 are defective. Plaintiffs' instruction 21 defines proximate cause and instruction 22 refers to negligence on the part of the defendant. Since liability is admitted by the defendant, there appears to have been no need for these instructions. However, defendant cannot complain, for the reason that defendant's given instructions 7 and 10 also contain the same defect. (*Commissioners of Lincoln Park v. Schmidt*, 375 Ill. 474.) Moreover, in view of plaintiffs' other instructions relating to damages we do not think that these instructions are prejudicially erroneous.

Defendant maintains that plaintiffs' instructions 23 and 24 attempt to summarize the elements to be taken into consideration by the jury in determining the damages to be awarded to plaintiffs and that they are not applicable where, as here, the question of aggravation of existing ailments is involved. Both of these instructions conclude as follows: "but said plaintiff cannot recover for any ailment existing prior to the time of the accident herein complained of." We think

373

these instructions correctly state the law governing the case.

Finally defendant contends that the trial court erred in permitting the plaintiffs to amend their complaint after the entry of the judgment and the conclusion of the trial. This contention is without merit. Under the provisions of section 46, para. (3) of the Civil Practice Act [Ill. Rev. Stats. 1951, ch. 110, § 170, subd. (3); Jones Ill. Stats. Ann. 104.046, subd. (3)] amendments are allowed to conform the pleadings to the proofs before or after judgment.

For the reasons given, the judgment in favor of Aileen C. Schulman for $4,000 and the judgment in favor of Betty Bentz for $20,000, and against the defendant, are affirmed.

*Judgments affirmed.*

FEINBERG and KILEY, JJ., concur.