ETHRIDGE, Chief Justice:
This is an action under the wrongful death statute. Miss.Code Ann. § 1453 (1964 Supp.). The jury rendered a verdict of $150,000 for plaintiffs-appellees, and defendants-appellants seek review of the judgment by the Circuit Court of Jones County, Second District.
The issues are (1) whether a peremptory instruction “on liability,” in the light of all instructions adequately directed the jury to consider whether the death of Mrs. Jane Thornton was a proximate result of defendants’ negligence; (2) whether the jury was warranted in finding that the trauma to her left breast caused a dormant cancerous condition to be aggravated and scattered to other parts of her body and proximately contributed to her death; and (3) whether the verdict is grossly excessive and not supported by the evidence.
We hold that, considering all of the instructions together, the jury properly had submitted to it the issue of proximate cause; there are no reversible errors, except that the verdict is grossly excessive, and, unless appellees accept a remittitur of $35,000, the case will be reversed and remanded for a new trial on damages; that if accepted it will be affirmed for $115,000.
A survey of the history of this and related litigation arising out of this single automobile-truck collision is essential for an understanding of the present issues.
I.
Mrs. T. C. (Jane) Thornton was injured on December 8, 1960, when a truck owned by the New Orleans & Northeastern Railroad Company, driven by appellant Lias Thigpen, deviated from its right side of the road and collided with an automobile driven by Mrs. Jane Thornton, which was on its right going north. Sitting next to her was her daughter-in-law, Melba Thornton; on the right side of the front seat was her son Byron; in the back was her youngest son, Chester, nine years of age.
Mrs. Melba Thornton sued the railroad for injuries from this accident, and the circuit court gave her a peremptory instruction on liability. On appeal this Court held that the testimony of Thigpen, the truck driver, made a question of fact on the issue of liability, which should have been submitted to the jury. The case was reversed and remanded. New Orleans & Northeastern R. R. Co. v. Thornton, 247 Miss. 616, 156 So.2d 598 (1963).
*549 Mrs. Jane Thornton, the person for whose later death plaintiffs-appellees sued in the instant case, also brought a personal injury action against the railroad for this collision. The circuit court gave her a peremptory instruction on liability, the jury returned a verdict of $80,000, and plaintiff accepted the trial court’s requirement of a $20,000 remittitur to $60,000. On appeal, following the decision in the Melba Thornton case, this Court held that Thigpen’s testimony was sufficient to create an issue of fact on liability, which should have been submitted to the jury. Hence the case was reversed and remanded. New Orleans & N. E. R. R. Co. v. Thornton, 247 Miss. 794, 157 So.2d 129 (1963).
On remand, the Melba Thornton case was tried anew on November 21, 1963, and submitted to the jury, which rendered a verdict for plaintiff of $42,500. On appeal, it was held that the issue of liability was properly submitted to the jury, but that the damages of $42,500 were grossly excessive. Appellees accepted a $12,500 remitti-tur, and that judgment was affirmed for $30,000. New Orelans & N. E. R. R. Co. v. Thornton, 252 Miss. 49, 172 So.2d 560 (1965).
After the trial of the Melba Thornton case, but before its affirmance by this Court, Mrs. Jane Thornton died of cancer on March 15, 1964. Three months later her husband and children filed an amended declaration, converting this suit into a wrongful death action, and alleging that, in addition to other injuries which their intestate suffered, she received a blow on her left breast which caused the cancer. Before trial this was amended to charge that the blow to her breast aggravated and caused to be spread a pre-existing cancerous condition, and that this trauma from the accident proximately resulted in her death from cancer.
Stoner v. Colvin, 236 Miss. 736, 110 So.2d 920 (1959), held that a trial court in its sound discretion has the right to consolidate for trial separate actions by different plaintiffs against a common defendant or defendants, for damages arising out of the same accident. Mr. Colvin and Mrs. Col-vin filed separate suits seeking damages against Stoner. The court consolidated the two cases for trial, but there were separate instructions and separate verdicts and judgments in the two actions. Under those circumstances, the consolidation for trial was not an abuse of the circuit court’s discretion.
In the instant case the circuit court followed a somewhat different method of quasi-consolidation. When the court announced that the Melba Thornton case would be tried first, it stated that the other pending cases arising out of this accident would be continued to await a final decision by the Supreme Court, “which would be controlling as to liability in the other cases.” Thereafter the other cases were continued from term to term awaiting decision in the second Melba Thornton case. In this case, the circuit court held that the Melba Thornton decision settled the question of liability in the cases arising out of this collision. This procedure was announced to counsel for both sides before the second trial of the Melba Thornton case. Hence, at the beginning of the trial in the instant case, the court said: “This case is therefore tried solely on the question of damages, there being no issue of contributory negligence involved, * * ” Defendants made no objection to this procedure before or during the trial. None was made until the motion for a new trial. Thigpen, the truck driver, did not testify here.
The circuit court instructed the jury “to find for the plaintiffs against the defendants on the question of liability.” On behalf of plaintiffs, it submitted to the jury the issues of whether the injuries received by Mrs. Jane Thornton to her left breast “caused a dormant cancerous condition, if any, to be aggravated, accelerated, spread, disseminated, extruded or scattered to the extent that it was carried to the other parts of her body and proximately *550 contributed to her death * * * ” Defendants also tendered in three instructions those issues to the jury. The court instructed the jury for defendants that Mrs. Jane Thornton had cancer on December 8, 1960, and the collision of December 8, 1960, did not cause her to have cancer. Defendants also were granted an instruction that, if the jury believed that Mrs. Jane Thornton had cancer on December. 8, 1960, and the collision aggravated and increased its severity, nevertheless, plaintiffs were not entitled to recover from defendants “for all of the consequences of such disease, if any, but only for such consequences of it as was (sic) the natural and proximate result of the collision and aggravation, if any.”
Appellants argue that the instruction to find for plaintiffs against defendants “on the question of liability” was fatal error; that it precluded the jury from determining for itself whether it was the trauma which caused the fatal metastasis of the cancer in decedent’s breast. However, all of the instructions must be considered together. The one complained of is perhaps ambiguous in that it refers to liability rather than negligence, but, as summarized above, all instructions obtained by plaintiffs and defendants on the key issues required a finding that the trauma was a proximate cause of the spread of the cancer to other parts of decedent’s body and of her death. Considering them as a whole, we do not think that the effect of the instructions was to hold as a matter of law that the collision caused the fatal spreading of the cancer and the death. In fact, those were the questions presented on the trial of the case by both sides. The medical testimony by several doctors for plaintiffs and by one for defendants dealt with these issues.
Moreover, the memorandum of the court pertaining to the trial of this case was served upon all counsel involved, and appellants made no objection to it, or to the procedures which the court was following. Appellants’ counsel made several objections during trial to interrogations by plaintiffs’ counsel on the ground that the questions dealt with “liability,” and that this was not an issue. For all of these reasons, the instructions were not misleading, but on the contrary the jury must have understood that it had to decide whether the trauma was the proximate cause of the metastasis of the cancer from decedent’s breast to other parts of her body and of her resulting death.
II.
The theory of plaintiffs’ case is that the injuries received from the collision by Mrs. Jane Thornton to her left breast caused a pre-existing, dormant cancerous condition to be aggravated, extruded and scattered by metastasis to other parts of her body, and this proximately contributed to her death. No purpose would be served by summarizing the medical testimony on this issue. The great weight of the medical evidence supports the finding of the jury of proximate cause on this issue: Dr. G. E. Holder, a general surgeon, who performed the radical mastectomy on Mrs. Thornton’s breast; Dr. T, F. Puckett, the pathologist who made the tissue examinations; Dr. Alton Ochsner, Sr., a surgeon of New' Orleans, a specialist in this field; Dr. Willis P. Butler, a pathologist from Shreveport; and Dr. Edwin H. Cole. They all agreed that a single trauma by itself could not cause cancer, but that it could and frequently did light up and cause to spread a dormant cancerous condition; that this probably was what occurred in the instant case; and probably Mrs. Thornton would have lived out her normal life expectancy if she had not had the trauma to her breast. Defendants offered only one witness on this issue, a specialist in gynecology and obstetrics, whose testimony at best made an issue of fact for the jury, and, read as a whole, tended in some respects to agree with the medical evidence for plaintiffs. /
There have been many cases dealing with the sufficiency of proof in traumatic can *551 cer cases. Most of them are discussed or cited in Comment, Sufficiency of Proof in Traumatic Cancer Cases, 46 Cornell Law-Quarterly 581 (1961). This is not a case of the evidence seeking to establish actual cause. It is conceded that Mrs. Thornton had a cancer in her left breast at the time of the accident. The question here is whether the evidence warranted a finding that the trauma caused a dormant cancer condition to metastasize and spread to other parts of decedent’s body, resulting in her death. Three criteria are usually required: (1) Existence of tumor prior to injury; (2) perceptible injury to tumor; and (3) actual aggravation or acceleration. The evidence amply warranted a finding of the existence of these three factors. See 3 Am.Jur., Proof of Facts 127-160 (1959); Russell & Qark, Medico-Legal Considerations of Trauma and Other External Influences in Relationship to Cancer, 6 Vand.L.Rev. 868 (1953).
Dixie Pine Products Company v. Dependents of Bryant, 228 Miss. 595, 89 So.2d 589 (1956), involved a trauma to an employee’s back in a workmen’s compensation case. The medical evidence was that this blow probably aggravated a pre-existing cancerous condition and resulted in employee’s death. Death benefits were affirmed. Williams Bros. Company v. McIntosh, 226 Miss. 553, 84 So.2d 692 (1956), is to the same effect. Charleston Shipyards v. Lawson, 227 F.2d 110 (4th Cir. 1955); Bartkoski v. Pittsburgh & L. E. R. R. Co., 172 F.2d 1007 (3d Cir. 1949); Hagy v. Allied Chem. & Dye Corp., 122 Cal.App.2d 361, 265 P.2d 86 (1953); Schulman v. Jones, 350 Ill.App. 365, 112 N.E.2d 920 (1953); Waltrip v. Acme Foundry & Mach. Co., 147 Kan. 781, 78 P.2d 898 (1938); Erickson v. Knutson, 237 Minn. 187, 54 N.W.2d 118 (1952); Bodnar v. Donald E. Davis, Inc., 5 A.D.2d 894, 170 N.Y.S.2d 941 (1958); Pfeiffer v. North Dakota Workmen’s Compensation Bureau, 57 N.D. 326, 221 N.W. 894 (1928) ; Ellis v. Jones & Laughlin Steel Co., 111 Pa.Super. 252, 169 A. 263 (1933).
The rule reflected by these authorities is summarized in 2 Restatement of Torts (Second), section 461 (1965):
Harm Increased in Extent by Other’s Unforeseeable Physical Condition
The negligent actor is subject to liability for harm to another although a physical condition of the other which is neither known nor should be known to the actor makes the injury greater than that which the actor as a reasonable man should have foreseen as a probable result of his conduct.
See also Appendix, Restatement (Second), Torts § 461 at 281-283 (1965).
III.
Appellants assert that the amount of the verdict ($150,000) is so grossly excessive that it evinces bias, passion and prejudice by tire jury, and that the trial court erred in not sustaining their motion for a new trial. There is no mathematical formula by which damages for personal injuries and death can be ascertained. Each case must depend upon its own facts. Illinois Cent. R. R. Co. v. Ragan, 252 Miss. 335, 173 So.2d 433 (1965).
Mrs. Thornton was injured on December 8, 1960, and died on March 15, 1964. She received a contusion of the chest, including a large bruise on the upper part of her left breast; and a hyperextension and hy-perflexion injury to the neck which strained the ligaments and muscles and contused the nerves in that area. There was a posterior numbness in the neck and shoulder area, and painful manipulation of the head. Dr. Holder said that she had a severe whiplash injury, and she complained of this pain “even when she was in the terminal treatment of cancer.” As a result she suffered frequent headaches and almost continuous pain in the neck and shoulders.
The contusion to her left breast was three or four inches in diameter, and over *552 a period of several months this hematoma changed in color and became more pronounced. As the result of a biopsy, a tumor mass was discovered in the left breast, in the identical area of the contusion, on August 12, 1961. It was diagnosed as an infiltrating adenocarcinoma of the breast, and a radical mastectomy was done, removing the left breast and considerable tissue under it. Before the accident, Mrs. Thornton was apparently in good health, and had no complaints. Later in April of 1963 an exploratory laparotomy was performed on the abdomen. The peritoneal cavity and omentum were found to be infiltrated and metastasized with carcinoma.
After an extensive period of hospitalization, 222 days on four different occasions, Mrs. Thornton died on March IS, 1964. Her total hospital and medical expenses were $8,233.65. Funeral expenses were $975.00. Mrs. Thornton was 44 years of age at the time of the accident, with a family of four children and a husband. Two children were married, and the other two were minors and living at home. There was a close relationship among her, her husband and children. She took good care of them and did the house work and performed other tasks of a housewife. They had a happy and normal family life. The jury was warranted in finding that she would be alive today if it had not been for the severe blow to her breast. Mrs. Thornton had considerable pain and suffering during the entire time from the accident until her death. She had surgery on two occasions. She lived for three years and three months after the collision, and left surviving her husband, 53 years of age, two adult children, and two minor children.
The wrongful death statute provides that the plaintiffs “shall recover such damages as the jury may determine to be just, taking into consideration all the damages of every kind to the decedent and all damages of every kind to any and all parties interested in the suit.” The record abundantly reflects that Mrs. Thornton and the plaintiffs suffered substantial damages: pain and suffering endured by her during her lifetime, disfigurement during her lifetime, loss of companionship, society and affection, and substantial hospital and funeral expenses. Appellees do not claim any loss of monetary contributions. However, the damages reflected by this record are considerable and substantially undisputed. Recognizing the primary responsibility of the jury, we nevertheless think that the amount awarded by the jury ($150,000) is grossly excessive and not justified by the record. Mrs. Thornton already had a dormant cancerous condition in her breast, she had no gainful employment, and her education is not disclosed. Her normal life expectancy is not revealed by the record. The amount of the verdict is greatly in excess of even remotely comparable awards by juries in this State.
For these reasons, we think the amount of the verdict is so grossly excessive as to show bias, passion and prejudice by the jury. The judgment will therefore be affirmed on all issues except the amount of damages, and the cause will be reversed and remanded for redetermination of the amount of damages only, unless, within fifteen days from the date the judgment of this Court becomes final, appellees accept a remittitur of $35,000, thus resulting in an aggregate judgment in this Court of $115,-000. In that event, the judgment will be affirmed for $115,000.
Affirmed on all issues except damages, and reversed and remanded on damages only, unless appellees accept specified re-mittitur, in which event the judgment as reduced will be affirmed.
RODGERS, JONES, BRADY and = SMITH, JJ., concur.