29 Ill. App.3d 1019 (1975)
331 N.E.2d 645
ELEANOR SOBERALSKI et al., Plaintiffs-Appellees,
v.
CHICAGO ROCK ISLAND AND PACIFIC RAILROAD COMPANY, Defendant-Appellant.
No. 58658.
Illinois Appellate Court  First District (1st Division).
June 16, 1975.
O'Brien, Kerpec & Evans, of Chicago (Donald J. O'Brien, Dom J. Rizzi, and Jack R. Pine, of counsel), for appellant.
Martin J. McGuire, of Chicago, for appellees.
Judgments affirmed.
Mr. PRESIDING JUSTICE BURKE delivered the opinion of the court:
This is an action to recover damages for personal injuries as a result of a train accident. Liability was admitted, and a jury trial was held on the issue of damages only. The jury returned verdicts against the defendant and in favor of the plaintiff Eleanor Soberalski in the amount of $75,000, and in favor of the plaintiff Clara Drag in the amount of *1020 $30,000. Judgments upon these verdicts were entered in the circuit court of Cook County, from which the defendant has appealed. The defendant's sole contention is that the amount of each verdict was excessive and against the manifest weight of the evidence.
The actions of Eleanor Soberalski and Clara Drag were tried together. We will consider the evidence relative to Eleanor Soberalski's injuries first. Evidence was presented, in Eleanor Soberalski's case, concerning a number of physical injuries which were alleged to have been the result of the train accident. These included injuries to her neck, lower back, right arm and eyes in addition to a temporary loss of weight and severe anxiety tension. In our review of the evidence, we are going to focus on the neck injuries because these were the most serious.
Mrs. Soberalski, accompanied by her two daughters, was riding aboard one of the defendant's trains between LaSalle, Illinois, and Chicago, Illinois, on May 28, 1965, when the accident occurred. Mrs. Soberalski testified that a boxcar came through the side of the railroad car and thereafter she remembered little else until arriving at St. Mary's Hospital several days later. Her daughter, Joanne Soberalski, testified that her mother was sitting in an aisle seat just before the accident and her mother was found on the floor after the accident. Some men then carried Eleanor Soberalski off the train, and the plaintiff recalled being in an ambulance before arriving at the hospital. A train conductor's report filled out at the scene of the accident stated that Eleanor Soberalski had complained of "head pains, bump on head, and back hurts."
Immediately following the accident, Mrs. Soberalski was taken to Reyburn Hospital, apparently in Ottawa, Illinois, where she was attended to by Dr. Herman Sutton. Dr. Sutton, one of the witnesses called by the plaintiff, testified that he first saw Mrs. Soberalski on the evening of May 28, 1965. Mrs. Soberalski told him that she had struck the back of her head in the accident and had a headache, dizziness and pain in the pelvic area. Dr. Sutton took several x-rays of various areas of the plaintiff's body including the skull. Dr. Sutton found no evidence of any injuries to the neck at this time, but he did find a bruise to the base of the skull in the occipital area. Dr. Sutton's diagnosis at that time was that Mrs. Soberalski had a cerebral concussion to the head and a sprain of the back.
Mrs. Soberalski was released from Reyburn Hospital and transferred to St. Mary's Hospital in La Salle, Illinois on May 30, 1965, 2 days after the accident. Dr. Walter J. Utz, Mrs. Soberalski's family doctor, attended her at St. Mary's. Dr. Utz testified for the plaintiff. On June 6, 1965, Dr. Utz testified, he took a history from Mrs. Soberalski. The plaintiff told Dr. Utz that she had been struck on the back of the neck with a suitcase during the train accident. She complained to him of severe pain *1021 in her neck over her cervical spine, pain in her right arm and elbow, headaches, nausea, loss of appetite, dizziness, extreme tension, and pain when she tried to move her head front to back. On June 6, 1965, he found that there was tenderness and swelling at the base of the cervical spine, which is located in the neck. He did not feel a muscle spasm in the neck, however, and x-rays he took of the neck on June 6, 1965, showed nothing abnormal.
Mrs. Soberalski saw Dr. Utz a number of times from June 6, 1965, through September 13, 1971. Dr. Utz testified that the plaintiff continually complained of pain in her neck and the inability to make the normal range of front and back movements of her head. He took x-rays of the plaintiff's neck on various occasions but did not notice any abnormalities in her cervical spine.
Dr. John L. Kieffer, a chiropractor, was called as a witness on behalf of the plaintiff, Eleanor Soberalski. Dr. Kieffer had seen Mrs. Soberalski both before and after her train accident. On January 16, 1965, some 4 1/2 months prior to the train accident, Dr. Kieffer had taken x-rays of Mrs. Soberalski during a visit in which the plaintiff complained of a chest cold and sinus drainage. X-rays of her neck revealed some arthritis in the cervical spine which Dr. Kieffer characterized as "Minimal and acceptable and normal."
The next time Mrs. Soberalski saw Dr. Kieffer was on February 11, 1966, 8 1/2 months after the train accident. Dr. Kieffer testified that the plaintiff told him that she was struck in the head with a suitcase during the accident and that she had pain in the posterior area of her cervical spine which is in the neck. Dr. Kieffer noted that her head was tilted rather severely to the right side. He took x-rays on this date, which he testified revealed thinning between the disc spaces in the cervical vertebrae. This condition was quite advanced and not normal, and due to its localized nature, it was his opinion that it was related to trauma or injury. He testified that the January 16, 1965, and February 11, 1966, x-rays indicated that "an injury of some nature" had taken place in the time period between those two x-rays. A subsequent x-ray taken December 5, 1966, showed that this condition was leading toward an osteoarthritic condition of the neck. Dr. Kieffer then testified that, based on a reasonable degree of medical chiropractic certainty, it was his opinion that the condition of Eleanor Soberalski's cervical spine revealed by the February 11, 1966 x-rays, was related to the train accident of May 28, 1965.
Eleanor Soberalski's next witness was Dr. Harry E. Barnett, an orthopedic surgeon. Dr. Barnett testified that he first saw the plaintiff on September 11, 1967. Mrs. Soberalski complained to him about pain and stiffness in her neck. Dr. Barnett noted that the movement of Mrs. *1022 Soberalski's neck and cervical spine was limited by as much as 75 percent. Dr. Barnett hospitalized the plaintiff for several weeks and diagnosed the plaintiff's difficulties at the time to include an acute strain of the cervical region of the spine. X-rays taken in September of 1967 revealed degenerative changes of the vertebrae bodies and disc spaces in the cervical spine.
Eleanor Soberalski continued to see Dr. Barnett for treatment until November 4, 1971. Dr. Barnett gave his opinion, based upon a reasonable degree of medical certainty, that Eleanor Soberalski's injuries in the cervical spine area were permanent, and that her disability would make her unable to carry on any gainful type of work. He based his opinion upon the x-rays of her neck, the plaintiff's complaints, and his physical findings. He also stated that based on a reasonable degree of medical certainty, it was his opinion that there was a direct causal connection between the plaintiff's condition and the train accident of May 28, 1965.
Eleanor Soberalski also called another orthopedic surgeon, Dr. Leonard Smith, as her witness. Dr. Smith testified that he saw Mrs. Soberalski at various times between January 1970 and May 1972. He first saw the plaintiff on January 30, 1970. At this time he took a history from her which included pain and stiffness in the neck, headaches, dizziness, and mention of the train accident of May 28, 1965. On that date, Dr. Smith had x-rays taken which he testified revealed arthritic changes and a straightening of the plaintiff's cervical spine which was abnormal. These changes, Dr. Smith testified, were a competent cause of the pain the plaintiff complained of and also would explain the plaintiff's inability to bend her neck within normal ranges.
In Dr. Smith's diagnosis, the plaintiff had a severe sprain in her neck which he defined as the tearing of muscles and ligaments in the area of the cervical spine. This sprain had caused some irritation to the occipital nerves resulting in occipital neuritis which is a competent cause of headaches, dizziness and the inability to properly move one's neck. Based on a reasonable degree of medical certainty, it was the opinion of Dr. Smith that the plaintiff's neck injury was permanent, and the plaintiff would be "severely restricted, even totally disabled in some cases" from performing normal household chores as washing and scrubbing floors and working in her prior occupation as a seamstress. Any sitting for long periods of time while using her arms and hands would aggravate her neck condition. When asked whether, based on a reasonable degree of medical certainty, there was a causal connection between the train accident of May 28, 1965, and Eleanor Soberalski's present condition, Dr. Smith testified that the history given him, including the train accident, "would be consistent with the injury that she has."
*1023 Clifford Spiller, Eleanor Soberalski's former employer, was called as a witness by the plaintiff. He testified that the plaintiff had worked for him as a seamstress prior to the train accident. She had worked regularly for him from January 7, 1963, until May of 1965. She had earned $1,549.11 in the 5 months prior to the accident. He testified that Mrs. Soberalski never returned to work after the train accident.
The defendant railroad's major witness was Dr. Leo Frederick Miller, an orthopedic surgeon. Dr. Miller did not examine or treat Eleanor Soberalski, but he did examine the x-rays of the plaintiff's neck which the plaintiff's medical witnesses had utilized in their testimony. He testified that the x-ray taken before the accident on January 16, 1965, which Dr. Kieffer had referred to, showed degenerative changes of osteoarthritis in the cervical spine area. Subsequent x-rays also showed a continuing degeneration of the cervical spine due to arthritis. The most recent x-ray he examined, taken in November of 1970, showed no pathology other than the arthritic condition and no evidence of injury to the spine or nerves supplying the muscles of Mrs. Soberalski's upper extremities.
Dr. Miller testified that based on the x-rays he had examined and the lack of any atrophy to Mrs. Soberalski's arms, Eleanor Soberalski "may have" sustained an injury to her neck of the "soft tissue type" but that there was no demonstrable injury shown in the x-rays. He was also of the opinion that these x-rays did not indicate that the plaintiff could not return to gainful employment.
Upon this evidence the jury returned a verdict in favor of Eleanor Soberalski for $75,000. The defendant railroad contends that this verdict was excessive and against the manifest weight of the evidence. Their contention is primarily based on the argument that the plaintiff's present condition and disability cannot be traced with any degree of certainty to the train accident of May 28, 1965. Defendant contends that the only evidence of a serious neck injury prior to the x-rays taken in 1971, was the plaintiff's own subjective complaints about pain and stiffness in her neck. This, they contend, taken with evidence that she had arthritis in her cervical spine prior to the accident, placed the cause of her injuries into serious question.
Evidence of Mrs. Soberalski's complaints of neck pain, stiffness and immobility from the time of the accident until the time of trial was well documented in the testimony of four of the doctors the plaintiff called to the stand. However, there was also substantial evidence beyond the plaintiff's "subjective complaints" which would establish a casual link between the train accident of May 28, 1965, and the condition of the plaintiff's neck at the time of trial. Dr. Kieffer testified that x-rays taken *1024 in February of 1966, about 8 months after the accident, showed that an injury to the plaintiff's cervical spine had taken place in the time period between the February, 1966, x-rays and the x-rays taken 4 months prior to the accident. Two orthopedic surgeons then testified that it was their opinion, based upon those and subsequent x-rays, that the condition of Eleanor Soberalski's neck and the resulting disabilities were caused by the train accident.
Both of these orthopedic surgeons testified that the plaintiff's injuries were permanent and would disable her from performing gainful employment or normal housework and were a competent cause of her pain and suffering which had been considerable. This testimony is contradicted by the defendant's expert witness who testified that Eleanor Soberalski was not disabled from performing gainful employment and that the x-rays showed no substantial injuries to her neck caused by the train accident.
 1 The testimony regarding the causal link between the train accident and the plaintiff's injuries reveals a conflict between the testimony of the plaintiff's medical experts and the defendant's expert. It was the opinion of two of the plaintiff's experts that the train accident was the cause of the plaintiff's injuries, while it was the opinion of the defendant's expert that the train accident was not the cause of any serious injuries to the plaintiff's neck. Where there is a conflict in the testimony of expert medical witnesses, the credibility of those experts is for the jury to decide, and such a conflict in testimony between experts will not require a finding that the verdict is against the manifest weight of the evidence. (Sourian v. Jones, 350 Ill. App. 365, 112 N.E.2d 920; Behles v. Chicago Transit Authority, 346 Ill. App. 220, 104 N.E.2d 635.) In both the Sourian and Behles cases the defendants contended that the verdicts were against the manifest weight of the evidence because no causal connection had been shown between the plaintiff's injuries and the accidents caused by the defendants' negligence. In both cases the courts held that expert opinions of doctors as to the causal connection between the accident and injury were sufficient to sustain the juries' verdicts for the plaintiffs even though the opinions of certain expert witnesses were in conflict with the opinions of other expert witnesses. We are of the opinion in the instant case that the jury could properly find that Eleanor Soberalski's neck injuries were caused by the train accident of May 28, 1965, and that such a finding is not against the manifest weight of the evidence.
 2 We are also of the opinion that the verdict for Eleanor Soberalski in the amount of $75,000 was not excessive. There was sufficient evidence for the jury to conclude that the injuries sustained in the train accident of May 28, 1965, caused Eleanor Soberalski to be permanently disabled *1025 so that she was unable to be gainfully employed or perform normal household chores. In addition, the jury could have found that the injuries and disabilities resulted in the loss of income from her former job and would continue to restrict her ability to earn a living in the future. The injuries were also the competent cause of a great deal of pain and suffering. In interests of brevity, we have only concerned ourselves with the evidence relating to Eleanor Soberalski's neck injuries. We are of the opinion that the evidence concerning Eleanor Soberalski's neck injuries is sufficient in itself to sustain the verdict of $75,000.
Clara Drag's action for personal injuries was tried jointly with Eleanor Soberalski's action. Clara Drag's injuries, it was alleged, grew out of the same train accident of May 28, 1965. Again, the defendant admitted liability in regard to the train accident and tried the case solely on the issue of damages. The jury returned a verdict in the amount of $30,000 for Clara Drag. The defendant contends that this verdict was excessive and against the manifest weight of the evidence. Evidence was presented regarding a number of injuries to Clara Drag, which included injuries to her right elbow, her lumbosacral spine (lower back), her cervical spine (neck), in addition to causing her blood pressure to rise. Again, in interests of brevity, we are going to primarily focus on the most serious injuries alleged: those to the lumbosacral spine and cervical spine.
Testimony by the plaintiff, Clara Drag, and her granddaughter, Donna Drag, established that the plaintiff and her two granddaughters were riding on one of the defendant's trains when the accident occurred on May 28, 1965. The plaintiff testified that something came through the side of the train car and hit her in the back, knocking her unconscious. Clara Drag was thrown over her granddaughter's seat to the floor of the train car. The plaintiff was carried off the train by some firemen and taken to Reyburn Hospital.
Dr. Herman Sutton saw the plaintiff at Reyburn Hospital on May 28, 1965, just after the accident. Dr. Sutton, called as the plaintiff's witness, testified that Clara Drag complained to him of discomfort in her lower back and he observed a bruised area on the lower part of her back. He took x-rays of the plaintiff's lower back which revealed no fractures. No x-rays were taken of Clara Drag's neck while she was at Reyburn Hospital. Clara Drag was released from Reyburn Hospital on May 30, 1965.
Clara Drag was then hospitalized at Michael Reese Hospital in Chicago, Illinois, from June 1 through June 12, 1965. There, the plaintiff was attended by Dr. Henry Newman who was called by the plaintiff to testify. Dr. Newman testified that his examination of Clara Drag on June 1, 1965, revealed a severe spasm in both the cervical spine (neck) and in the lower back and traumatic neuritis of the right arm. These *1026 injuries indicated to him trauma or injury. Dr. Newman stated that the reference made to "severe strain" in his written report on that date included within its meaning spasms which he testified he found while examining Clara Drag on June 1, 1965. Dr. Newman continued to see the plaintiff from time to time through May of 1972. Clara Drag continued to complain to him of severe pain in her lower back, pain and stiffness in her neck, and pain and numbness in her right arm.
Dr. Newman testified that it was his opinion that the injuries to Clara Drag's spine in the neck and lower back and the injury to her right arm were of a permanent nature. He testified that he had tried everything and still the plaintiff had not shown any considerable improvement. He testified that it was his opinion, based on a reasonable degree of medical certainty, that these injuries were the result of the train accident of May 28, 1965. These injuries, he testified, were a competent cause of the pain and numbness which the plaintiff had been complaining of. On cross-examination, Dr. Newman testified that injuries similar to those Clara Drag had sustained could be caused by arthritis, and x-rays of the plaintiff's spine revealed some degenerative arthritis in the cervical spine (neck) area. However, on redirect Dr. Newman testified that there was "no question" as to the cause of Clara Drag's injuries, the cause of which he had previously stated to be the train accident.
Dr. Harry E. Barnett, the orthopedic surgeon who testified in Eleanor Soberalski's behalf, also testified in Clara Drag's behalf. He saw Mrs. Drag for the first time on June 1, 1965, 3 days after the train accident. He testified that the plaintiff complained to him of pain in her shoulders, neck, lower back and buttocks. His examination revealed a large bruise in the buttocks region; tenderness, muscle spasm and limitation of motion in the plaintiff's lower back about the lumbar spine; and pain, spasm and limitation of motion in the plaintiff's cervical spine in her neck. He ordered a collar support for the neck and a corset for the lower back. Clara Drag saw Dr. Barnett on a number of occasions thereafter through June 28, 1972. Mrs. Drag continued to complain of a great deal of pain in both her neck and lower back and of limitations in moving her back and neck.
X-rays taken of Clara Drag's cervical spine (neck) in June and September of 1965 revealed the cervical spine to be normal. However, an x-ray taken on November 1, 1971, revealed a severe compression of the sixth cervical vertebra. Dr. Barnett testified that this condition was permanent. He stated that it was his opinion that there was an "absolute direct connection" between the train accident and the compression of the cervical vertebra. On cross-examination, Dr. Barnett was carefully examined by the defendant's attorney about the fact that the injuries to *1027 Clara Drag's spine in the neck area did not appear in the early x-rays. Dr. Barnett testified that the plaintiff's injuries were what is called avascular neucroses, wherein there is damage done to the blood supply of the spine at the time of the injury and with the passage of time the vertebra collapses and becomes compressed. This process often takes years. On redirect Dr. Barnett agreed that Clara Drag's spinal injuries were a "classic example of insult or trauma, progression and complaint and then a finding after 5 years."
In regards to Clara Drag's lower back, Dr. Barnett testified that x-rays taken November 1, 1971, showed spurring of two vertebrae of the lumbar spine to a "rather marked degree." X-rays taken on June 2, 1965, which predated the accident, had shown minimal spurring in the lumbar spine. The spurring shown in the November, 1971, x-rays was a permanent injury. It was Dr. Barnett's opinion that the spurring of the lumbar spine in Clara Drag's lower back was caused by the train accident because the spurring was of a very localized nature which would indicate traumatic causation.
These injuries, Dr. Barnett testified, resulted in an acute strain to the cervical (neck) and lumbar (lower back) regions of the spine. These injuries were a competent cause of the pain the plaintiff had been experiencing and would disable Clara Drag in regard to normal housework.
Dr. Leo Frederick Miller, the orthopedic surgeon, testified again on behalf of the defendant, this time concerning Clara Drag's spinal injuries in the neck area. He testified that the November 1, 1971, x-rays of Clara Drag's neck revealed a compression of one of the vertebrae of the cervical spine. He testified that this neck injury in his expert opinion was not caused by trauma and therefore was not connected with the train accident. Dr. Miller testified that if the train accident had been the cause of the injury, the injury would have shown up within a year or two after the accident.
Clara Drag, testifying in her own behalf, stated that prior to the accident she had led an active life, had performed normal housework chores and helped her husband in a delicatessen that she and her husband operated. The Drags had operated the delicatessen for some 15 years. Clara Drag testified that she never returned to work in the delicatessen after the accident. They sold the delicatessen in April of 1966, 10 months after the accident. Clara Drag testified that they had to sell the delicatessen because her husband could not operate it alone. There was evidence, however, that the delicatessen had lost money the year before the accident and that the Drags were considering selling the delicatessen around the time of the accident. Clara Drag also testified that *1028 after the accident she could not do her normal housework any more. Upon this evidence the jury returned a verdict in the amount of $30,000 in favor of Clara Drag.
Defendant contends that the verdict for Clara Drag was excessive and against the manifest weight of the evidence. The defendant's contention is based primarily on the argument that the jury in reaching its verdict must have considered Clara Drag's alleged increase in blood pressure and her loss of income from the delicatessen business. These two considerations, defendant argues, are clearly not justifiable as damages arising out of the train accident.
 3 We have not discussed the evidence relating to Clara Drag's high blood pressure, as we are of the opinion that there was sufficient evidence of other injuries to justify a verdict of $30,000. We disagree with defendant's contention, however, that the jury could not have properly considered Clara Drag's loss of income from the delicatessen business. While the business loss from the delicatessen's operation of the year prior to the accident may have been the motivating factor in the Drags' decision to sell the delicatessen, the jury could have also believed Clara Drag's statement that they sold the delicatessen because her husband was unable to operate it alone. The question of the credibility of a witness' testimony is for the jury to decide and where the facts and testimony leave room for different conclusions to be drawn by reasonable persons, a reviewing court will not substitute its judgment upon the facts for that of the jury. (Cochran v. Consumers Co., Division of Vulcan Materials Co., 8 Ill. App.3d 535, 291 N.E.2d 48 (abstract opinion); Bouillon v. Harry Gill Co., 15 Ill. App.3d 45, 301 N.E.2d 627.) Even though there was evidence that the Drags were thinking about selling the delicatessen at the time of the accident, the jury could have believed Clara Drag's explanation and found that "but for" the accident, the delicatessen would not have been sold.
Regardless of whether the accident occasioned Clara Drag to lose income from the operation of the delicatessen, there was sufficient evidence of other injuries caused by the accident to justify the verdict. Permanent injuries to Clara Drag's spine in the neck and lower back had resulted in a great deal of pain and suffering and had disabled her from carrying on normal activities such as housework. Clara Drag testified that she never returned to work in the delicatessen after the accident, and Dr. Barnett had testified that Clara Drag would be disabled in regard to normal housework. From these two facts, the jury could have reasonably inferred that Clara Drag's potential future earning power, whether in the delicatessen business or elsewhere, was substantially and adversely affected by her injuries.
*1029 Clara Drag's expert witnesses, Dr. Barnett and Dr. Newman, both testified that it was their opinion that the spinal injuries to Clara Drag's neck and lower back were caused by the train accident of May 28, 1965. The defendant's expert, Mr. Miller, testified that the train accident, in his opinion, did not cause the injuries to her neck. It is for the jury to determine the credibility of these expert witnesses, and a conflict between their opinions will not render the verdict one which is against the manifest weight of the evidence. (Sourian v. Jones, 350 Ill. App. 365, 112 N.E.2d 920; Behles v. Chicago Transit Authority, 346 Ill. App. 220, 104 N.E.2d 635.) The evidence concerning Clara Drag's pain and suffering, disability and diminished potential for earning a living arising out of her injuries was sufficient to justify a verdict in the amount of $30,000, whether or not the loss of the delicatessen was taken into account. We are of the opinion that the verdict rendered in favor of Clara Drag for $30,000 was neither excessive nor against the manifest weight of the evidence.
For the foregoing reasons the judgments in favor of the plaintiffs, Eleanor Soberalski and Clara Drag, are affirmed.
Judgments affirmed.
GOLDBERG and EGAN, JJ., concur.