No. 33,891

JOHN W. WALTRIP, *Appellee*, v. THE ACME FOUNDRY & MACHINE
  COMPANY and THE AMERICAN MUTUAL LIABILITY INSURANCE
  COMPANY, *Appellants*.

(78 P. 2d 898)

Opinion filed May 7, 1938.

*LeRoy Bradfield,* of Neodesha, for the appellants.

*A. R. Lamb* and *Clement A. Reed,* both of Coffeyville, for the appellee.

The opinion of the court was delivered by

SMITH, J.: This is an action under the workmen's compensation
act. The commissioner of workmen's compensation awarded com-
pensation to the claimant. This award was approved on appeal by
the district court. Respondent appeals from that judgment.

The only point in issue is whether the claimant met with personal
injury by accident arising out of and in the course of his employ-
ment.

The facts are as follows: Claimant was employed on May 28,
1937, by respondent as a cupola tender. On that day while he was
putting up the bottom doors on a furnace (the doors weighed be-
tween 350 and 400 pounds) one of these doors fell down and caught
claimant on the groin, and scraped on down his leg. After a few
days a knot came in the left groin. He talked to Doctor Bagby, and
about July 13, 1937, went to Doctor Dickinson. On August 11, 1937,
he went to the hospital and Doctor Hughbanks performed an oper-
ation on his left groin. He left the hospital about August 17, 1937.
Prior to the time the cupola door struck him there was nothing the
matter with his groin. In the spring of 1936 he had an operation on
his left leg and a little knot was removed. The knot had been there
a week or two. It was removed from about three and one half to
four inches above his left ankle. The foregoing is substantially the
story as told by claimant.

Doctor Dickinson testified for claimant. He testified that when

he examined claimant after the door fell on him he found two or three lumps in his left groin and that in his opinion they were sarcoma; that sarcoma is a malignant tumor which arises from connective tissue and that there are several different kinds of sarcoma. Doctor Dickinson also testified that while many things might cause sarcoma he thought it was pretty generally recognized that trauma bore some relation to the actual cause. He testified as follows:

"Q. From the history you got of his case, do you have an opinion whether or not the condition was the result of trauma? A. I wouldn't say was the result of trauma. I think it has something to do with the injury, but whether it is produced by it, I don't think anybody can definitely state, but I think it has something to do with trauma; I think trauma had something to do with the production of this mass or aggravation of it; further than that, I don't think I could say with any certainty. That is just an opinion of mine.

. . . . . . . . . . . . . .

"Q. Do you have an opinion whether his disability is permanent or not? A. I don't think he will recover from it. That is my opinion."

On cross-examination he testified that about a year before, he took a projection off of claimant about the size of the end of his finger and about an eighth of an inch long. Later in his examination he testified that he had a microscopic section made of the lump he removed from the left leg of claimant and it was melanosarcoma. In answer to questions by the examiner Doctor Dickinson testified as follows:

"Q. Doctor, if a person was predisposed to sarcoma, but not having it developed at any particular point and received a very severe injury to that, would that likely cause or revive or aggravate a condition like that? A. That is what leading authorities state.

"Q. Did you hear the description of the injury this man received? A. I understood he had a door of the cupola drop on his leg.

"Q. The evidence is that the door weighed from 350 to 400 pounds? A. Yes.

"Q. With a weight like that falling on a person, the testimony is from the lower part of the groin to below his knee, if a man was predisposed to such a condition you have described here, would that injury likely cause or revive or aggravate that condition? A. All I can say is that leading authorities state that."

He further testified that when he took the lump off of the left leg of claimant he examined him carefully for any signs of its spreading, but could find none. This concluded the testimony on the part of the claimant.

Doctor Hughbanks testified that he removed a lump from the left groin of claimant; that there was no evidence of trauma about the

mass removed; that he sent this to a pathologist for study, and that in his opinion claimant would never pursue a gainful occupation.

Doctor Hellwig testified that he was a pathologist; that he made a microscopic study of the lump taken out of the groin of claimant; that he found it to be a neurogenic type of sarcoma and formed the opinion that it came from some other part of the body. He further testified that he would expect a melanotic sarcoma such as that removed by Doctor Dickinson to appear later in the groin. He stated that neurogenic sarcoma is never caused by trauma. This witness and counsel then engaged in a discussion of statements by medical authorities as to whether a single blow ever caused neurogenic sarcoma. The witness insisted to the end that the more up-to-date and better authorities held that it did not. The impression that a layman gets from the record is that the doctors were in good faith, but that the study of sarcoma is in its infancy, and doctors are learning something about it every day.

After hearing this evidence the commissioner stated the history of the case about as it has been given here, and found that the injury to the groin of claimant "aggravated and activated and set in motion" an existing condition which resulted in the sarcomatous mass in claimant's left groin, and that claimant was entitled to compensation for permanent total disability. He was awarded compensation accordingly.

On appeal the district court found the issues in favor of the claimant and gave judgment accordingly. The appeal is from that judgment.

The argument of respondent is that all the evidence was to the effect that the sarcoma in question was neurogenic and that trauma never caused neurogenic sarcoma, and hence there was a complete failure of proof that the sarcoma in the groin of claimant was caused by the door falling on him.

The question cannot be disposed of that easily. On appeal to this court in a workmen's compensation case we consider on reviewing the court's findings only the evidence which supports or tends to support the findings of the trial court. (See *Evans v. Western Terra Cotta Co.*, 145 Kan. 924, 67 P. 2d 426.)

The award in this case was made on the theory that the accident to the claimant when the door fell on him "aggravated, activated and set in motion an existing condition which resulted in the sarcomatous mass in claimant's left groin."

This court has approved awards of compensation based on such a theory. (See *Blackburn v. Brick & Tile Co.*, 107 Kan. 722, 193 Pac. 351; also, *Farmer v. Oklahoma Natural Gas Corp.*, 134 Kan. 629, 7 P. 2d 60.)

In this case some of the doctors testified that a neurogenic sarcoma could not result from trauma. The doctor who testified for the claimant stated that in his opinion and from a consultation of the authorities the blow on the groin of claimant had something to do with the production of this mass or aggravation of it. He then referred to some cases he had treated and to medical works on sarcoma. Subsequently in answer to questions by the examiner he testified that leading authorities state that an injury such as claimant sustained would likely revive or aggravate a condition such as claimant was suffering from. Such an answer is about as definite a statement of an opinion as a doctor can make as to the cause of sarcoma. They all must be guided by what cases have come under their observation and what they read. There is testimony in this record disputing the evidence given by the doctors who testified for claimant. Medical works are referred to which hold contrary to those relied on by claimant. We are not concerned with what conclusions this court would have reached had the questions of fact been submitted to us in the first place. We are not the triers of the facts. It was the function of the trial court to consider the evidence and draw reasonable inferences and conclusions therefrom. (See *Evans v. Western Terra Cotta Co.*, supra.)

We have concluded that there was sufficient evidence in this record to sustain the award of compensation.

The judgment of the trial court is affirmed.