No. 40,686

Lewis Johnson, *Appellee*, v. Skelly Oil Company, *Appellant*.

(312 P. 2d 1076)

Opinion filed July 3, 1957.

*Ralph L. Cunnyngham,* of Tulsa, Oklahoma, argued the cause, and *Max C. Bucklin,* of Pratt, *E. P. Villepigue,* of Wichita, and *Louis B. Gresham,* of Tulsa, Oklahoma, were with him on the briefs for the appellant.

*B. V. Hampton,* of Pratt, argued the cause, and *Bill Murray,* also of Pratt, was with him on the briefs for the appellee.

The opinion of the court was delivered by

Wertz, J.: This was a workmen's compensation case. We will hereinafter refer to appellee Lewis Johnson as claimant and appellant Skelly Oil Company as respondent. Claimant was awarded compensation for temporary total disability by the workmen's compensation commissioner based upon a finding that claimant's injury aggravated a pre-existing condition which resulted in his disability. From the award of the commissioner, respondent appealed to the district court, contending that written claim for compensation was not made within the statutory time. After a hearing the trial court held that written claim for compensation was not served within the statutory time and dismissed claimant's action. Claimant appealed from that judgment to this court and after a review of the record (*Johnson v. Skelly Oil Co.,* 180 Kan. 275, 303 P. 2d 172) we reversed the judgment of the trial court and remanded the cause with directions to set aside its order dismissing the action and to proceed in accordance with the provisions of the Workmen's Compensation Act. The trial court, in compliance with our directions, held a further hearing and sustained the award of the workmen's compensation commissioner's finding that claimant sustained personal injury through accident arising out of and in the course of his employment by respondent and that such accident and resulting in-

jury intensified and aggravated an existing condition and contributed to his disability, resulting in temporary total disability for which claimant was entitled to compensation for certain specified weeks. The lower court entered judgment accordingly.

From the judgment entered, respondent appeals to this court and contends that the trial court erred in three particulars, all of which resolve into one question: Was the evidence sufficient to sustain the trial court's finding that claimant's pre-existing disease was aggravated by the accidental injury received by him in the line of duty and in the course of employment?

Respondent recognizes the well-established rules by which the triers of the facts in workmen's compensation cases are governed. The risk of employing a workman with a pre-existing disease is upon the employer. Where a workman is not in sound health but is accepted for employment and a subsequent industrial accident suffered by him aggravates his condition resulting in disability, he is entitled to compensation. (*Hall v. Kornfeld-Harper Well Servicing Co.*, 159 Kan. 70, 74, 151 P. 2d 688; *Workman v. Johnson Bros. Construction Co.*, 164 Kan. 478, 190 P. 2d 863, and cases therein cited.) There is no standard of health necessary to bring a workman under the statute and accidental injuries are compensable thereunder where the accident only serves to aggravate or accelerate an existing disease or intensifies the affliction. (*Holler v. Dickey Clay Mfg. Co.*, 157 Kan. 355, 139 P. 2d 846; *Copenhaver v. Sykes*, 160 Kan. 238, 243, 160 P. 2d 235.)

However, respondent strenuously urges that we adopt a rule followed in some other jurisdiction to the effect that where a pre-existing disease has been materially aggravated by accidental injury the compensation award should be apportioned according to the contribution of the pre-existing condition and the accident and cites *American Rolling Mill Co. v. Stevens*, 290 Ky. 16, 160 S. W. 2d 355, 145 A. L. R. 1256, wherein it is stated:

"Where an accident 'lights up' a pre-existing disease, the accident is compensable but award should be apportioned according to contribution of each." (Syl. 4.)

The mentioned decision is based upon the Kentucky statute, which is altogether different from ours, and the rule laid down appears to be the minority rule. It might be pointed out that by an amendment to the Kentucky compensation statute in 1948 the legislature expressly adopted the majority rule. (Section 342.120.)

We see no reason why we should change our well-established rule and we therefore adhere to the majority rule laid down in our opinions cited above.

Under the rule laid down in *Pinkston v. Rice Motor Co.,* 180 Kan. 295, 299, 303 P. 2d 197; *Barr v. Builders, Inc.,* 179 Kan. 617, 296 P. 2d 1106, and cases cited in the foregoing opinions, we will examine the record to determine whether the evidence most favorable to claimant is sufficient to sustain the award.

The evidence shows that on February 9, 1953, claimant was hired by respondent and given a pre-employment examination by Dr. M. E. Christmann, the company doctor, who found a small lump in claimant's left leg and was told it was a fragment of a .22 caliber bullet left from a twenty-year-old injury. On October 9, 1953, during the course of his employment by respondent, claimant, while sliding in and out of a boiler in the process of cleaning the scale therefrom, scraped and bruised the lump on his left leg. By evening the protrusion was sore, "raw and reddish" and he bathed it with alcohol. The next morning his left leg was "swollen and puffy" and sore to the touch and the lump had become the size of half a hen egg. He reported for work that day and after discussing the injury with his foreman was requested to go to work. The first of the next week respondent's superintendent checked on his injured leg and the protrusion having grown considerably larger, he advised claimant to see the doctor. However, claimant continued working until November 9, 1953, when he went to Dr. Christmann. The doctor lanced the draining abscess in the calf of his left leg and found a hard mass at the base of it, which he removed. On November 16, the doctor performed an operation on claimant's leg as the lump had been found to be cancerous. Up until the time of the hearing, claimant was in the hospital four times and during that time another operation was performed on his leg and he was given several radium treatments in the damaged area. At the time of the hearing, he had a hole in his left leg the size of a dime and the doctor was still administering treatment and had not yet released him for work.

Dr. M. E. Christmann testified that he was a physician employed by the respondent; that he attended claimant the latter part of October or the forepart of November [1953], when he was brought into the office with a draining abscess of the calf of his leg; that at that time he gave him a local anesthetic in the area and proceeded

to open the abscess wide enough to allow free draining so that it could heal and at the base of this abscess he found a very hard mass which he proceeded to remove; that since this first treatment claimant received continuous medical treatment and attention by him to the date of the hearing; that claimant told him he bruised his leg sliding back and forth in the boiler while doing repair work at the respondent's plant. He further testified that he had examined claimant previously for the purpose of employment by the respondent and at that time found a small lump in his leg which claimant described as being due to an old injury. He testified that in his opinion any small protrusion from the body is subject more to the possibility of bruise or injury to the tissues and that the bruise of the claimant in his opinion resulted in the abscess he found; that he later discovered the matter was cancerous and operated on claimant at the hospital; that claimant also received some radium treatments of the area and later went to the hospital in January of 1955 for another operation on the leg; that at the time of the hearing claimant's leg was still in need of treatment and he (the doctor) was administering treatment to the leg and would not release claimant for work and claimant could not return to manual labor.

The doctor, in a letter dated June 24, 1954, directed to respondent at its Tulsa office, stated:

"In my record Mr. Johnson had a small mass in his leg at the sight [site] of the trouble in question at the time he was accepted for employment, which condition was aggravated or precipitated into difficulty requiring the surgery and radium treatments."

He testified on cross examination that the lump he removed from claimant's leg was found to be malignant; that he treated him for a malignant tumor secondary to his abscess; that the infection had spread from the time claimant was injured until he saw him and had gone deep enough to involve the upper portions of the tumor; that the "blow" to the leg did aggravate the condition in the leg, but that the bruise did not cause the malignant tumor therein.

He also testified:

"Q. Do some tumors abscess and become malignant without any type of injury to them at all?

"A. No, I don't think that could be established.

"Q. There are tumors inside the body that grow and become malignant that aren't harmed or hit in any way. Isn't that true? Doesn't that happen?

"A. Tumors seldom abscess of themselves.

"Q. Now, Doctor, you testified that this possible hitting of a bruise or raised place on the leg would aggravate any other type of condition in the leg. You don't mean to say that would cause the tumor to grow, do you? Go ahead and answer that, please.

"A. I mean that if there was a bruise causing an abrasion of the skin causing the infection, that the invading infection in a period of time from the time the injury occurred to where I saw it could have aggravated the tumor, yes."

He further testified that the abscess was "intertwined with any other condition that existed in his (claimant's) leg, and this abscess resulting from the blow did aggravate any condition that existed in his leg, normal or abnormal."

Without further detailing the evidence contained in the record, we are of the opinion that the facts and circumstances of the case amply support the findings and award of the trial court and it follows that the judgment is affirmed.

It is so ordered.