No. 47,865

Margaret Cox, Widow of Melbourn Arthur Cox, Deceased, (Claimant) *Appellee,* v. Ulysses Cooperative Oil and Supply Company, (Respondent) *Appellant,* and Farmers Elevator Mutual Insurance Company, (Insurance Carrier) *Appellant.*

(544 P. 2d 363)

Opinion filed December 13, 1975.

*Raymond L. Dahlberg,* of Turner and Hensley, Chartered, of Great Bend, argued the cause, and *Lee Turner,* of Great Bend, was with him on the brief for the appellants.

*Harry L. Eddy,* of Wichita, argued the cause, and *Walter F. Stueckemann,* of Jetmore, was with him on the brief for the appellee.

The opinion of the court was delivered by

Kaul, J.: This is a workmen's compensation case. The appeal is by respondent-employer and its insurance carrier from a judgment of the district court which approved and adopted the findings and award of the examiner in favor of claimant. The claimant is the widow of Melbourn A. Cox, the workman who died on February 10, 1973, as a result of a "malignant melanoma" which had metastasized to the brain.

The basic question presented is whether there was substantial competent evidence to support the trial court's findings that there was an accidental injury which arose out of and in the course of employment; and that such injury resulted in the death of the workman. Intertwined is the question whether the trial court applied an improper medical standard in determining whether or not claimant had sustained her burden of proof concerning the causal relationship between the employment and the death of decedent.

The facts, which are basically undisputed, are developed by

the testimony of claimant and the medical history given by the deceased to his treating physician.

At the time of his death the decedent, Melbourn A. Cox, was fifty-six years of age and was employed at respondent's elevator, as foreman. Mr. Cox had had a dark mole on his back below the left scapula for a number of years. In October 1971, Mr. Cox scratched the mole on a nail while at work. Claimant testified that prior to this incident the mole was "real dark brown", about the size of a large pea, and that the decedent had had no previous problem with it because it was flat. After the mole was scratched there was a change in its appearance "It was raised up and had gotten bigger around." Claimant further testified that after the mole had been scratched her husband came home with blood on his shirts nearly every day. The decedent told her that he was always hitting or scraping the spot on protruding nails or the rough cement walls of the plant; and that he was in contact with the rough walls constantly, because he had to get down into the pits and was crawling around in passageways at the elevator. Claimant testified that decedent told her he first scratched the mole while he was up on the lift in the elevator and that he had mentioned it to his supervisor. Claimant also testified that she knew the mole had not changed in appearance prior to October 1971; and that to her knowledge the condition of the mole was never aggravated by anything outside her deceased husband's employment.

Early in January 1972 Mr. Cox went to see Dr. Evan R. Williams about the mole. Dr. Williams found a "4 cm. by 4 cm. lesion" which appeared to be a malignant melanoma. On January 19, 1972, Dr. Williams surgically removed the growth and submitted it to a pathologist, who reported "malignant melanoma, adequately excised." Dr. Williams testified that he examined decedent on January 28, 1972, and again on February 25, 1972. On an examination in May 1972 Dr. Williams found that the malignancy had spread from the original site in the decedent's lymph nodes; and that two nodes in his armpits were positive for malignancy. Dr. Williams continued seeing decedent through 1972. Early in January 1973 decedent was found to be suffering cerebral disturbance and having severe headaches and was scheduled for a brain scan. The brain scan report stated the existence of possibly two metastatic lesions in the brain. At this point, Dr. Williams referred decedent to the care of Dr. Dennis F. Moore, an oncologist, at St. Francis Hospital in Wichita. Decedent was treated with whole

brain radiation and high dose Decadron. After treatment he was returned to Dodge City where his death ensued.

These proceedings were then initiated before the Workmen's Compensation Examiner. Depositions were taken and after a hearing, the examiner found that Mr. Cox was injured in October 1971, and that his injury aggravated a preexisting condition to a point where it became cancerous and that his death resulted.

Based upon decedent's annual salary of $10,000.00, the examiner found claimant to be entitled to the maximum dependent benefits and entered an award accordingly. Appellants applied for review to the Workmen's Compensation Director who sustained the award, entered by the examiner, except for a modification pertaining to medical and funeral bills, which is immaterial to the issue on appeal. Appellants then appealed to the district court. On review the district court adopted the findings of the examiner and in addition specifically found "the testimony of Dr. Williams, the treating physician, provides ample evidence to support the Award."

The examiner reviewed the testimony of Mrs. Cox and summarized the testimony of Dr. Williams in part as follows:

"Dr. Evan R. Williams was the attending physician. He operated on the claimant in January, 1972. The history he took from the decedent was as follows: 'the man stated that he had had a mole on his back beneath the scapula on the left side for a number of years. That in October he continued to hit this against a door at work and it became irritated, and it began fungating and grew. He relates this to aggravation at work, and whether this is true or not I do not know. The mole itself had been present for years, but he stated it started to grow after the irritation.' This was the history related to the Doctor in January, 1972, and was consistent with the history of illness related by Mrs. Cox in her testimony. After Dr. Williams performed the surgery, he continued to make checks on the decedent and when he was in for a routine visit, he found that the claimant suffered a double hernia for which he was subsequently operated on. Another surgery was performed on the decedent on May 1, 1972 for the removal of lymph nodes under the arms. The patient's progress was followed, and in January, 1973 it appeared that the cancer was having some effect on his brain which was confirmed by a brain scan. Dr. Williams then referred the decedent to Dr. Dennis Moore of Wichita, Kansas. After some treatment in Wichita, the decedent expired on February 10, 1973. Dr. Williams testified that moles or melanoma are susceptible sites for malignancy. No one knows when they will start or what will do it. It is the consensus of all doctors to avoid hitting the mole at all times. If it is in a spot where it will receive irritation, as under a belt or a bra line, most doctors will urge its removal rather than take a chance on the irritation causing the melanoma to begin fungating or growing. Dr. Williams stated that in his opinion the irritation of the mole could have aggravated the pre-existing melanoma to a point

where it became malignant; and that therefore the malignancy spread through his body which caused his death."

Concerning the testimony of Dr. Moore, the examiner summarized as follows:

"All of the medical records were introduced in evidence and the deposition of Dr. Moore was taken on behalf of the respondent and insurance carrier. He testified that he did not see the decedent until after the cancer was affecting his brain and that he became familiar with his history through Dr. Williams. Apparently, Dr. Moore is a doctor who takes incurable cancer patients, and works with experimental programs to see whether or not their particular cases are: 1. possible candidates for experimental treatment; 2. and that he does perform some experimental treatment on them. In so far as cause of cancer and prevention, he seemed to be somewhat ill informed. He stated he did not think irritation caused the melanoma to become malignant, but he had no first-hand knowledge on which to base this nor was he involved in the early treatment. As Dr. Williams indicated, he did not think Dr. Moore was any more qualified to give an opinion on this subject than he, Dr. Williams, was. After reading his deposition, it does not appear to me that he is."

The examiner found in pertinent part:

"1. The decedent, Melbourn A. Cox, was injured in October, 1971; and that said injury aggravated a pre-existing condition to a point where it became cancerous. The cancer later causing the death on February 10, 1973.

"2. The accident occurred in October, 1971, and the date of death was February 10, 1973 and this was within the five year statutory time limit for the claimant to file her claim which later resulted in death. She filed her claim on June 1, 1973 which was within one year of the statutory time for filing her claim. Therefore, notice of the accident and claim was made within the statutory period.

"3. Respondent and insurance carrier did not introduce any evidence to rebut the history of the accident given by the decedent to his doctor and given by testimony in this case."

On appeal, appellants specify two points which raise interrelated issues. One, that the district court's finding that the decedent's death arose out of and in the course of his employment is not supported by substantial competent evidence; and, two, that the district court applied an improper medical standard in determining whether claimant had sustained her burden of proof. Appellants consolidate their argument on the two points specified. They say that the only medical evidence to causally connect trauma and the cancerous condition is the testimony of Dr. Williams indicating that trauma "may" induce malignancy in a mole. Therefore, appellants argue, the effect of the district court's reliance on the testimony of Dr. Williams was to apply an improper medical standard in determining whether claimant had sustained her burden of proof con-

cerning causal relationship between employment and the death of claimant's decedent.

Claimant, on the other hand, maintains that her deceased husband had a preexisting condition; i. e., a dark brown mole on his left shoulder, which became irritated as a result of the October 1971 injury sustained in the course of his employment and continued to be irritated in the course of his employment causing the mole to fungate and develop into a condition which metastasized to the brain causing his death. Claimant says the only two principles involved in the case are the compensability of an aggravation of a preexisting condition and did the work connected aggravation cause a previous dormant mole to become fungating and eventually lead to death.

Appellants concede that findings in a workmen's compensation case, which are supported by substantial evidence are conclusive and will not be overturned by this court on appeal. Pronouncement of this limited scope of review was made in the recent case of *Stockman v. Goodyear Tire & Rubber Co.*, 211 Kan. 260, 505 P. 2d 697, wherein we said:

"'Under G. S. 1957 Supp. 44-556, the appellate jurisdiction of this court in compensation cases is confined to reviewing questions of law only. In doing so, it is necessary to determine whether the record contains any evidence which tends to support the judgment rendered, and in so considering, this court is required to view all testimony in the light most favorable to the prevailing party below. If, when so considered, the record contains any evidence which supports the trial court's judgment, that judgment must be affirmed, this court being conscious at all times of the fact that we have little concern with disputed questions of fact in ordinary lawsuits and none whatever in compensation cases, except to ascertain whether the record contains any evidence which on any theory of credence justifies the trial court's finding or conclusion of fact. (*Rothman v. Globe Construction Co.*, 171 Kan. 572, 235 P. 2d 981; *Silvers v. Wakefield*, 176 Kan. 259, 270 P. 2d 259; *LaRue v. Sierra Petroleum Co.*, 183 Kan. 153, 325 P. 2d 59; *Burton v. Western Iron and Foundry Co.*, 173 Kan. 506, 249 P. 2d 688.) (pp. 185, 186.)' [*Allen v. Goodyear Tire & Rubber Co.*, 184 Kan. 184, 334 P. 2d 370.]" (p. 262.)

The term "substantial evidence" as used by this court in the review of workmen's compensation cases has been defined on numerous occasions. In *Barr v. Builders, Inc.*, 179 Kan. 617, 296 P. 2d 1106, we held:

"The term 'substantial evidence,' when applied by this court in reviewing an award under the Workmen's Compensation Act, means evidence possessing something of substance and relevant consequence and carrying with it fitness to induce conviction that the award is proper, or furnishing substantial basis of fact from which issue tendered can be reasonably resolved." (Syl. ¶ 3.)

See, also, *Deines v. Greer,* 216 Kan. 548, 532 P. 2d 1257; *Rund v. Cessna Aircraft Co.,* 213 Kan. 812, 518 P. 2d 518; and *Jibben v. Post & Brown Well Service,* 199 Kan. 793, 433 P. 2d 467.

Concerning the consequences flowing from a primary injury our holding in *Berger v. Hahner, Foreman & Cale, Inc.,* 211 Kan. 541, 506 P. 2d 1175, was restated in the recent case of *Deines v. Greer,* supra:

"When a primary injury under the Workmen's Compensation Act is shown to have arisen out of the course of employment every natural consequence that flows from the injury, including a new and distinct injury, is compensable if it is a direct and natural result of a primary injury. (citing case.)" (Syl. ¶ 2.)

With respect to the rule relating to the application of the compensation act to accidental injuries, which worsen or aggravate preexisting physical conditions, we deem it appropriate to repeat what was said in *Strasser v. Jones,* 186 Kan. 507, 350 P. 2d 779:

"The act prescribes no standard of health for workmen, and where a workman is not in sound health but is accepted for employment, and a subsequent industrial accident suffered by him aggravates his condition resulting in disability, he is not to be denied compensation merely because of a preexisting physical condition. In other words, it is well settled that an accidental injury is compensable where the accident only serves to aggravate or accelerate an existing disease or intensifies the affliction. (citing cases.)" (p. 511.)

See, also, *Johnson v. Skelly Oil Co.,* 181 Kan. 655, 312 P. 2d 1076; and *Kauffman v. Co-operative Refinery Assn.,* 170 Kan. 325, 225 P. 2d 129.

With these rules in mind, we examine the record to determine whether there is any substantial evidence which on any theory of credence supports the district court's findings.

Appellants suggest the only medical evidence in the record to causally connect the trauma and the cancerous condition is Dr. Williams' testimony merely indicating that trauma "may" induce malignancy in a mole. As appellants point out, Dr. Williams did testify that any mole that is constantly irritated "may" become malignant, but this was only a small excerpt lifted out of the context of his other pertinent testimony. Dr. Williams traces in detail the course of treatment and spread of the malignancy from the first diagnosis of malignant melanoma in January 1972, to decedent's death on February 10, 1973, as a result of malignant melanoma with brain metastasis. In linking the decedent's death to his work-related injury of October 1971, Dr. Williams testified:

"The next time I saw Mr. Cox was April 30, 1972. At that time, I advised him to have an axillary dissection and a skin graft in the area of his original

melanoma. That was performed May 1, 1972, and it revealed that the malignancy had spread from the original site into the lymph nodes and that two of the twenty nodes in his armpit were positive for malignancy.

"Q. Are you able to say within reasonable medical certainty that this was a continuation of the first problem with the mole?

"A. I am.

"Q. All right. What is that medical certainty, sir?

"A. My reasonable medical opinion is that the nodes that were found to be positive in his axilla were a direct result of his original melanoma."

On cross-examination, Dr. Williams admitted that he had no opinion whether malignancy existed prior to the initial trauma, but as to the origin and spread, he testified:

"A. . . . I think the origin of his cancer was in the lesion that was removed.

"Q. It is your opinion that that is the origin of the cancer.

"A. That is correct.

"Q. As to when it became malignant you don't have an opinion.

"A. I do not.

"Q. Insofar as it spreading is concerned you cannot relate the spreading of the cancer, the metastasizing, to other parts of the body to a bump on the mole, can you, sir?

"A. I cannot.

"Q. The state of medical knowledge at this time does not allow you to make such an opinion, does it?

"A. That is correct.

"A. I am saying there is a reasonable medical certainty that trauma may aggravate a preexisting mole."

Early in January 1973, Dr. Williams found decedent to be cerebrally disturbed and suffering severe headaches. A brain scan was scheduled and two metastatic lesions were found present in decedent's brain. Decedent's condition rapidly worsened and he died on February 10, 1973. When questioned concerning the cause of death, Dr. Williams testified:

". . . It is my opinion, within reasonable medical certainty, that the original lesion on Mr. Cox's back was the ultimate cause of his death.

"Q. What was the cause of death as recorded by you on the death certificate?

"A. Malignant melanoma with brain metastasis."

Recognizing our obligation under the rules, heretofore set forth, and in particular the admonition that if the record contains any evidence which on any theory of credence justifies the trial court's findings, they must be upheld (*Stockman v. Goodyear Tire & Rubber Co.*, supra.); we are compelled to say that the testimony of Dr. Williams supports the findings of the examiner and trial court.

When read in its entirety, and viewed in the light of decedent's medical history, we believe Dr. Williams' testimony substantially meets the test of reasonable medical certainty. We think it is to be concluded from Dr. Williams' testimony that decedent's pre-existing mole, whether cancerous or not, was injured and aggravated in the course of his employment; and that the injury and aggravation, as shown by the sequence of symptoms and the doctor's testimony, caused or hastened the spread of the malignant melanoma, ultimately resulting in death.

Admittedly, the testimony of Dr. Moore is, in part at least, in conflict with that of Dr. Williams. Dr. Moore testified that it is medically improbable that a malignant melanoma is caused by direct trauma; and that in his opinion the trauma in this case did not aggravate or accelerate the growth of the tumor and spread of it, but he conceded, that it was certainly medically possible.

As we have said on many occasions, we have no concern with disputed questions of fact in compensation cases, but look at all the testimony in the light most favorable to the prevailing party below in determining whether the record contains any evidence which tends to support the judgment rendered.

The medical testimony and arguments of counsel presented in this case point up the divergence of opinion, medical, legal, and judicial with respect to causation in cancer related compensation cases. Two lines of cases approving and rejecting awards, based upon interpretation of medical testimony, are catalogued in 3 Larson Workmen's Compensation Law §§ 79.51; 79.52; 79.53; 79.54; 80.20; 80.30; 80.31; and 80.32.

Appellants rely principally on *Nightlinger v. Giant Super Market*, 334 Mich. 90, 53 N. W. 2d 602, in which a workmen's compensation award for bone cancer resulting in the amputation of a leg was reversed due to the insufficiency of evidentiary support. The medical testimony in *Nightlinger* was a doctor's statement that many pathologists believe repeated trauma to a certain area could have something to do with the development of bone cancer. However, the testifying doctor did not offer his own personal opinion as to whether the trauma was the cause. The closest he came to giving his opinion on causation was:

"'Well, I suppose it is possible to conceive of repeated bumping producing enough stimulation of the tissues or change in the tissues so that some abnormal growth might take place. That is about as near as I can answer that question.'" (p. 97.)

The Michigan Supreme Court found this evidence insufficient to support the award, holding:

". . . In awarding compensation the commission may not indulge in the assumption of a mere possibility in the nature of a guess as to whether plaintiff is entitled to compensation. . . ." (p. 97.)

While it may be said the decision in *Nightlinger* does not support our conclusion herein, it is to be noted that the medical testimony of Nightlinger's treating physician was given in the form of supposition and possibility. It does not approach the degree of certainty found in the testimony of Dr. Williams to the effect that it was his opinion, within reasonable medical certainty, that the original lesion on his back was the ultimate cause of Mr. Cox's death.

Kansas cases and those of other jurisdictions, as well as medical and legal literature, are examined and discussed in an exhaustive review of the subject written by Jerry G. Elliott entitled "TRAUMATIC CANCER AND 'AN OLD MISUNDERSTANDING BETWEEN DOCTORS AND LAWYERS'" (Vol. 13 K. L. R., p. 79 [1964]). Mr. Elliott observes that where trauma is sought to be verified as a cause of cancer in a compensation case, Ewing's postulates are often mentioned. (*E. g., Wayne County v. Lessman*, 136 Nebr. 311, 285 N. W. 579.) The postulates are criteria developed by Dr. James Ewing, a recognized cancer authority, as conditions which must be proved before trauma can be accepted as a cause of cancer. The postulates are stated by Mr. Elliott as follows:

"(1) authenticity of trauma
"(2) previous integrity of the part
"(3) reasonable time relation
"(4) continuity of symptoms of injury and tumor
"(5) histologic or other proof of tumor
"(6) location of tumor at exact point of injury." (p. 82.)

A review of the evidence in the instant case reveals that each of the postulates is substantially established.

There are four workmen's compensation cases appearing in our reports which deal with the trauma-cancer causation question. They are: *Strasser v. Jones*, 186 Kan. 507, 350 P. 2d 779; *Johnson v. Skelly Oil Co.*, 181 Kan. 655, 312 P. 2d 1076; *Waltrip v. Acme Foundry & Machine Co.*, 147 Kan. 781, 78 P. 2d 898; and *Parker v. Farmers Union Mut. Ins. Co.*, 146 Kan. 832, 73 P. 2d 1032. In each case a district court judgment allowing compensation was affirmed on appeal. There was conflicting medical testimony, and the sufficiency of the evidence was challenged on appeal in each case. While there

are factual distinctions, it may be said that our decision herein accords with the previous cases mentioned.

The case of *Charleston Shipyards v. Lawson*, 227 F. 2d 110 (4th Cir. 1955) involves a compensation award under the Longshoremen's and Harbor Workmen's Compensation Act. (33 U. S. C. A. § 901, *et seq.*) The basis of the award was a malignant melanoma and the case is otherwise closely analogous to that at bar. Claimant had a wart-like lesion on the bottom of his foot which had never caused him any trouble until he stepped on a sharp piece of steel which penetrated his shoe sole and pierced the wart. The wart raised up a quarter of an inch above surrounding tissue and when excised, examination revealed a malignant melanoma. The upshot was a hemipelvectomy—amputation of the entire leg and half of the pelvis. The Deputy Commissioner's finding that the injury played a definite part in the development of the malignant melanoma, which necessitated the amputation, was upheld by the United States District Court. On appeal to the Circuit Court, Shipyards contended the evidence failed to establish the requisite causal connection between the employment and the disability for which compensation was awarded. The evidence in question was the testimony of one of claimant's treating physicians who testified:

" 'It has been recognized that trauma does play a part in the development of malignant lesions, and this is particularly true of malignant melanomas. Almost all cases of melanoma will give a history of some form of injury or chronic irritation to a preexisting lesion. The direct effect is difficult to prove except by inference.' " (p. 112.)

In affirming the award, the Circuit Court of Appeals relied on the additional facts that the only proved injury or irritation to the wart-like lesion was the steel piercing injury testified to and that the melanoma was present in the lesion within ten days thereafter.

In the case at bar the nail scratching in October 1971, and subsequent aggravation in the course of employment, was the only injury or irritation proved concerning the mole on decedent's back. The mole fungated and malignant melanoma was found to exist at the site of the injury within two months thereafter. These facts are of probative value and taken together with the undisputed medical history, the sequence of symptoms, and the testimony of Dr. Williams constitute ample evidence to support the findings of the examiner and trial court.

The judgment is affirmed.