(611 P.2d 180)

No. 51,547

LILLIAN F. CLAPHAN, *Claimant-Appellant,* v. GREAT BEND MANOR, *Respondent-Appellee,* and COMMERCIAL UNION ASSURANCE COMPANY, *Insurance Carrier-Appellee,* and KANSAS WORKMEN'S COMPENSATION FUND, *Appellee.*

Opinion filed May 23, 1980.

*Donald H. Humphreys,* of Great Bend, for appellant Lillian F. Claphan.

*Thomas Berscheidt,* of Ward and Berscheidt, of Great Bend, for appellees Great Bend Manor and Commercial Union Assurance Company.

*Brock R. McPherson,* of McPherson, Brown and Brown, of Great Bend, for appellee Kansas Workmen's Compensation Fund.

Before FOTH, C.J., SWINEHART and MEYER, JJ.

MEYER, J.: In this workmen's compensation case the claimant, Lillian F. Claphan (appellant), was awarded 26 weeks of temporary total disability compensation plus certain hospital and medical expenses by the workmen's compensation examiner. The director and the district court affirmed the findings and award.

The workmen's compensation fund filed a motion on appeal for dismissal in this action, but such motion was objected to by the attorney for the appellant, and denied by this court pending the hearing of the case on appeal.

Appellant was injured on January 27, 1977, while employed as a nurse's aide by the Great Bend Manor (appellee), a nursing home. She had previously worked as a waitress and babysitter. At the time of the injury, she was 46 years of age and a divorced mother of six children. She suffered a disc injury to her back while putting a patient on a bedpan. She continued to work about 12 days until the pain was so extreme she could not get out of bed. There was testimony that the claimant had filed a workmen's compensation claim in the late 1960's for leg problems and that she had applied for but was denied social security benefits for those problems.

Among the examiner's findings is the following:

"6. Both Dr. Brown and Dr. Replogle in Great Bend were treating claimant for a disc problem. Dr. Stein did not eliminate the possibility of back strain as a result of the accidental injury occurring on January 27, 1977, but did indicate that notwithstanding any such injury, claimant would have arrived at the same point with the tumor within 3 to 6 months whether or not she had had an accident. Thereafter claimant's disability is based solely on the lymphoma being treated by Dr. Stein, and other related physicians. From the testimony of Dr. Stein, it is apparent that this lymphoma was not caused by an injury on the job. Consequently, the resulting disability is not work related. The Examiner has concluded that the claimant would be entitled to receive 6 months of temporary total disability compensation or 26 weeks at the rate of $64 per week."

Dr. Paul Stein, a neurosurgeon, examined claimant upon referral by Dr. Replogle, general practitioner, and Dr. Brown, orthopedic surgeon, who treated her after the injury. Dr. Stein testified that claimant was 100 percent disabled and that her problems were caused by a tumor which had "preexisted" the accident. He testified that the accident was at least an indirect cause of the tumor's becoming symptomatic when it did and explained this conclusion as follows:

"I would think that the tumor was there at that time, preexisting to that, that she probably had adequate room in the spinal canal for the tumor, that it had, you know, at that point wasn't causing severe pressure, but that the effort of lifting at that particular time may very well have exacerbated or caused that preexisting tumor to become symptomatic. That isn't all that terribly uncommon. I've seen patients who had a minor car accident—or one particularly fell out of a tree and hit his head, started having headaches, never had them before. Well, he had a brain tumor but, you know, the cause—the fall simply caused that tumor to become symptomatic. His pressure relationships in the head were just adequately balanced until that. I think that's what happened to her back. The effort of lifting might have stretched the tumor, caused it to swell, press on the nerve, might have caused the tumor to hemorrhage a little bit into itself, thus becoming larger and press on the nerve, but that's the way I would think it happened.

"Q. But it didn't cause the tumor in and of itself?
"A. No."

Dr. Stein further stated that if she had not had the accident, the tumor would have become symptomatic within approximately 3 to 6 months.

The issues herein, as stated by appellant, are as follows: (1) Whether an accidental injury, within the scope of the workmen's compensation law, which precipitates or accelerates activity of, or aggravates, a preexisting tumorous condition which permanently totally disables the injured worker is compensable under the Kansas Workers' Compensation Law; and (2) whether the claim-

ant, by reason of total disability due to a tumorous condition in her back, which was precipitated, accelerated, or aggravated by an accidental injury on January 27, 1977, is entitled to a maximum permanent total disability compensation and attendant medical benefits. We shall deal with these issues together.

The rule with regard to preexisting conditions is well established in Kansas.

"The act prescribes no standard of health for workmen, and where a workman is not in sound health but is accepted for employment, and a subsequent industrial accident suffered by him aggravates his condition resulting in disability, he is not to be denied compensation merely because of a preexisting physical condition. In other words, it is well settled that an accidental injury is compensable where the accident only serves to aggravate or accelerate an existing disease or intensifies the affliction. [Citations omitted.]" *Strasser v. Jones,* 186 Kan. 507, 511-12, 350 P.2d 779 (1960).

Admittedly, both Dr. Stein's testimony and the examiner's findings stress that the injury did not cause the tumor. However, the test is not whether the injury causes the tumor, but rather whether the injury aggravates or accelerates the condition.

An examination of cancer cases decided in Kansas makes this clear. In all of the cases, the issue on appeal was whether there was substantial evidence to support the finding that the injury aggravated the cancerous condition. In all cases the court on appeal sustained the trial court's finding of aggravation.

In *Waltrip v. Acme Foundry & Machine Co.,* 147 Kan. 781, 78 P.2d 898 (1938), the test indicated that the trauma (injury) caused or aggravated the mass which became malignant.

In *Johnson v. Skelly Oil Co.,* 181 Kan. 655, 312 P.2d 1076 (1957), the tumor was found to have been aggravated by the blow, but the bruise did not cause the malignant tumor.

In *Strasser v. Jones,* 186 Kan. 507, the delay in cancer surgery caused by the infection from the injury was found to have aggravated the cancerous condition because earlier surgery might have prevented the spreading of the cancer.

In *Cox v. Ulysses Cooperative Oil & Supply Co.,* 218 Kan. 428, 544 P.2d 363 (1975), the medical testimony was that the trauma probably induced malignancy in a preexisting mole.

The case at bar is most similar to *Johnson,* in that here the tumor was not the result of the injury, but the injury affected the onset of the symptoms related to the tumor.

The tumor, however, would have become symptomatic regardless of the injury within 3 to 6 months.

The problem of causation was discussed in *Boeckmann v. Goodyear Tire & Rubber Co.,* 210 Kan. 733, 504 P.2d 625 (1972). In that case, the claimant had a history of degenerative arthritis. The examiner's finding that there was no aggravation of the preexisting condition was affirmed by the trial court and the Supreme Court on appeal. There was testimony to the effect that a reported June 7 back strain did not make any difference in the degenerative condition of claimant's hip. Further, the testimony indicated that the everyday bodily motions would aggravate claimant's condition and there was no difference in effect between stoops and bends on the job or off.

The testimony in the case at bar falls short of this in that Dr. Stein testified that in his opinion the incident at work contributed significantly to the onset of her symptoms. There was minimal, if any, testimony that her problems were caused by back strain.

*Boeckmann* was distinguished in *Demars v. Rickel Manufacturing Corporation,* 223 Kan. 374, 573 P.2d 1036 (1978). In *Demars,* the district court set aside an examiner's finding of aggravation of his preexisting condition. The district court found that the disability resulted solely from a physical condition present when he was employed. The Supreme Court reversed the trial court stating that the condition in *Demars* was not one "which in and of itself would degenerate or worsen without the heavy lifting." 223 Kan. at 378.

The court distinguished the *Boeckmann* case stating:

"The degenerative arthritis had been a progressive process and would have continued to get worse from everyday activity whether on or off the job. Every time the claimant bent over to tie his shoes, walked to the grocery store or got up to adjust his television set there would be an aggravation of his condition." 223 Kan. at 378.

Dr. Stein testified that even without an injury of any kind, the claimant's condition would deteriorate within 3 to 6 months to the same point it was now. However, this still leaves the problem that the condition was accelerated 3 to 6 months by the injury.

We have carefully studied all the testimony had before the examiner in this matter and have concluded that the only reasonable interpretation thereof is to the effect that the appellant, in fact, had a tumor which preexisted her injury herein. We conclude that the basis of the examiner's decision was that the injury

accelerated the tumor's becoming symptomatic by about 6 months, and that, therefore, the claimant was entitled to 6 months' disability only, but because the tumor was not caused by the injury, she was not entitled to full disability. However, as noted above, the test is not whether the tumor was caused by the injury, but whether the condition was aggravated or accelerated by the injury. It cannot be seriously contended that the evidence could be interpreted in any manner other than that the appellant had a 100 percent disability at the time of the hearing.

The fact that the trial court awarded 26 weeks of compensation together with that court's finding that the injury did not cause the tumor, causes us to conclude that the trial court was correct in adopting the findings of fact as made by the examiner, but arrived at the wrong conclusion of law. The trial examiner apparently apportioned the award according to that part of her problems attributable to the injury (6 months of compensation) and that part attributable to her preexisting tumor (the full 100 percent disability). This he cannot do. See *Johnson v. Skelly Oil Co.,* 181 Kan. 655. Appellant was thus entitled to 100 percent disability benefits.

It is clear that the injury of appellant aggravated or accelerated a preexisting condition, and it was error for the workmen's compensation examiner to apportion an award between the disability resulting from the injury and the disability resulting from a preexisting condition.

The issue remains as to whether the workmen's compensation fund is liable for any part of appellant's award. The examiner found as follows:

"10. There is insufficient evidence upon which to base the finding that any portion of any award should be set off against the Kansas Workmen's Compensation Fund except under those statutes which grant to the respondent and insurance carrier the credit for temporary total or medical expenses paid pursuant to an Order of the Examiner and which are overpaid. Insofar as any of the temporary total disability compensation and/or medical have been overpaid pursuant to such order, credit should be given. Otherwise, no portion of any award should be set off against the Kansas Workmen's Compensation Fund."

There is no showing that the employer either hired or knowingly retained appellant as a handicapped person as provided by K.S.A. 1979 Supp. 44-566.

We hold the fund is not liable herein.

The trial court's judgment is reversed with directions to award

100 percent disability benefits to appellant, same to be paid by respondent and its insurance carrier.

Reversed and remanded with instructions.