(195 P.3d 771)
No. 97,707

JAMES E. MARTIN, *Appellant,* v. CNH AMERICA LLC, *Appellee.*

Opinion filed November 16, 2007.

*Randy S. Stalcup,* of Affiliated Attorneys of Pistotnik Law Offices, PA, of Wichita, for appellant.

*Stephen M. Kerwick* and *Eric K. Kuhn,* of Foulston Siefkin LLP, of Wichita, for appellee.

Before HILL, P.J., GREEN and MARQUARDT, JJ.

MARQUARDT, J.: James E. Martin appeals the denial of workers compensation benefits. We affirm.

Martin began working for Case New Holland (CNH) in 1987. In 2002, he began assembly work which required getting underneath cars on a creeper, bending, getting on his knees, twisting, turning, squatting, and stooping. Martin began to notice right hip problems in May 2004. Martin was unsure whether the pain was work-related and recalled no specific incident of injury. After visiting several doctors, Martin was eventually diagnosed with avascular (or aseptic) necrosis of both hips and received hip replacements in March and April 2005. Martin was off work from February 2005 to May 2005. When he returned to work, he resumed the tasks and responsibilities of his job.

Dr. Daniel Zimmerman testified that Martin's work activity did not appear to be a contributing cause of his avascular necrosis. He indicated a lack of adequate evidence to state within a reasonable degree of medical probability the existence of a causal relationship between Martin's work activity and the development of his avascular necrosis. Even though Dr. Zimmerman indicated that Martin's repetitive work activity could have aggravated the condition, he stated that the condition described by Martin could also have been aggravated by activities outside of work.

Dr. Zimmerman assessed Martin's permanent partial impairment of the body as a whole at 44 percent. Dr. Zimmerman admitted that Dr. Paul Stein's reports were based on research of the disease, while Dr. Zimmerman did not review or research literature about the disease.

Dr. Stein conducted an independent medical examination of Martin. Dr. Stein concluded that Martin's condition was caused by cigarette use. Dr. Stein stated that any effect of work activity on Martin's condition was relatively minor. In terms of causation, he estimated that the disability was 90 percent disease-related and 10 percent work-related.

When asked if 90 percent of Martin's condition was the result of the natural progression of the disease of avascular necrosis, Dr. Stein replied, "[A]t least, if not 100 percent. Once the avascular necrosis starts, it basically goes on to the Nth stage no matter what you do." Dr. Stein testified that avascular necrosis involves a deteriorating process that is much more rapid than degenerative diseases and progresses under any circumstance. Even Martin's daily activities would aggravate the condition. In fact, Martin himself testified that he had difficulty moving while walking, bending, or stooping, regardless of whether he was at work or not. Dr. Stein stated that even though Martin's work activities may have caused pain and discomfort, it would not accelerate the process of necrosis or be any more harmful than other activities, but that it may have aggravated his symptomology.

Dr. Pat Do, after an examination of Martin, stated that Martin's condition was not likely caused by his work. Dr. Do testified that Martin's condition resulted from alcohol and cigarette use and the natural aging process. Dr. Do's report stated that "the job duties of the patient could have aggravated the underlying condition of avascular necrosis." Dr. Do agreed that standing, walking, bending, and squatting could aggravate the condition, whether done at work or outside of work. Dr. Do also estimated that Martin's disability was 90 percent preexisting and 10 percent work-related. Dr. Do stated that although work may have aggravated the condition, it was highly unlikely to have caused it.

The administrative law judge (ALJ) denied Martin's claim for workers compensation. Based on the testimony of Drs. Stein and Do, the ALJ concluded that Martin's condition was not caused by his employment, but rather by tobacco, alcohol, and steroid use, the aging process, and normal daily activities. The ALJ found that the term "aggravate" as used by the doctors referred to an increase

in symptomatology, not a change in the physical structure of the body. The ALJ held that Martin failed to meet his burden of proof.

The ALJ's decision was affirmed by the Workers Compensation Board (Board). The Board held that Martin failed to prove that (1) if he had not been employed with CNH, he would not be equally injured; (2) by the greater weight of evidence, Martin's work activities aggravated and accelerated his condition beyond that caused by the natural aging process and normal daily activities; and (3) Martin's injuries arose out of his employment with CNH.

The Board's determination is a negative finding. Our standard of review for a negative finding of fact is that the party challenging the finding must prove arbitrary disregard of undisputed evidence or some extrinsic consideration such as bias, passion, or prejudice. *Nance v. Harvey County*, 263 Kan. 542, 551, 952 P.2d 411 (1997).

However, the Board's decision ultimately turned on its interpretation of an "injury." In making this decision, the Board relied on the terminology of K.S.A. 2006 Supp. 44-508(e), which defines an injury as:

"[A]ny lesion or change in the physical structure of the body, causing damage or harm thereto, so that it gives way under the stress of the worker's usual labor. It is not essential that such lesion or change be of such character as to present external or visible signs of its existence. An injury shall not be deemed to have been directly caused by the employment where it is shown that the employee suffers disability as a result of the natural aging process or by the normal activities of day-to-day living."

The Board made this decision even though there was no dispute among the testifying doctors that work aggravated Martin's condition to some extent. In essence, the Board interpreted the statute to mean that a "change in the physical structure of the body" does not include minor work-related aggravations that contribute to increased symptomatology if the increase is primarily or equally caused by the aging process or normal activities. Martin argues that all the experts agreed his work activity contributed to aggravate his condition; therefore, the injury is compensable.

When the facts in a workers compensation case are not disputed, the question is whether the Board correctly applied those facts to the law, which the appellate court reviews de novo. *Martinez v.*

*Excel Corp.*, 32 Kan. App. 2d 139, 142, 79 P.3d 230 (2003). Whether an injury is compensable is a question of law over which an appellate court exercises unlimited review. *Coleman v. Swift-Eckrich*, 281 Kan. 381, 383, 130 P.3d 111 (2006). Moreover, when this court reviews an agency's interpretation of a statute, the correct standard of review is de novo. *Fieser v. Kansas State Bd. of Healing Arts*, 281 Kan. 268, 270, 130 P.3d 555 (2006).

"Interpretation of a statute raises a question of law subject to unlimited appellate review. [Citation omitted.] Under the doctrine of operative construction, an administrative agency's interpretation of a statute it is charged with enforcing is entitled to judicial deference in certain circumstances. [Citations omitted.] . . . However, '[t]he final construction of a statute [always] rests within the courts.' [Citations omitted.]" 281 Kan. at 270.

Thus, whether Martin's disability resulted from an "injury" under K.S.A. 2006 Supp. 44-508(e) is a question of law which this court reviews de novo.

As a general rule, aggravation of a preexisting physical condition is compensable in a workers compensation action where the injury arose out of and in the course of employment. *Boeckmann v. Goodyear Tire & Rubber Co.*, 210 Kan. 733, 738, 504 P.2d 625 (1972). K.S.A. 2006 Supp. 44-501(c) states that an employee "shall not be entitled to recover for the aggravation of a preexisting condition, except to the extent that the work-related injury causes *increased disability*. Any award of compensation shall be reduced by the amount of functional impairment determined to be preexisting." (Emphasis added.)

When dealing with preexisting conditions that are aggravated by work duties, the test is not whether the injury causes the condition, but whether an injury aggravates or accelerates the condition. *Claphan v. Great Bend Manor*, 5 Kan. App. 2d 47, 49, 611 P.2d 180, *rev. denied* 228 Kan. 806 (1980). In the instant case, all three doctors testified that Martin's condition was aggravated, so that it became symptomatic; two doctors estimated 90 percent of this aggravation was due to other factors, while 10 percent was due to work.

The evidence failed to indicate that Martin's work activities increased his disability, as opposed to merely aggravating his symptomatology, as required by K.S.A. 2006 Supp. 44-501(c).

The *Claphan* case illustrates the distinction between mere aggravation of symptoms and actual change in physical condition. In that case, the claimant, who had a preexisting tumor, sustained a back injury while working as a nurse's aide. This court stated, "[T]he test is not whether the tumor was caused by the injury, but whether the condition was aggravated or accelerated by the injury." 5 Kan. App. 2d at 51. The court awarded full disability benefits, holding that where a preexisting condition is aggravated by an accidental injury arising out of and in the course of employment, a claimant is entitled to compensation for the entire disability without apportionment. 5 Kan. App. 2d at 51-52.

The key distinction between *Claphan* and the instant case is that Claphan sustained a specific identifiable injury that was directly tied to her job. Martin claimed no specific injury.

Additionally, it should be noted in the context of *Claphan* and other cases cited, that prior to 1993, K.S.A. 44-508(e) did not include the phrase, "An injury shall not be deemed to have been directly caused by the employment where it is shown that the employee suffers disability as a result of the natural aging process or by the normal activities of day-to-day living." See L. 1993, ch. 286, sec. 28.

In *Boeckmann,* the court held: "[W]hile the bending, stooping and twisting required by claimant's job aggravated the arthritic process already existing in his hips, these episodes did not amount to miniature accidental accidents, but that the simple everyday acts of living were as much to blame for claimant's condition as was his work." 210 Kan. at 734. Boeckmann was unable to point to a specific job-related incident that aggravated his preexisting condition. The court focused on its belief that such symptoms would have similarly occurred off the job. Although acknowledging that the claimant was "disabled from doing strenuous labor," the court stressed that the disease and symptoms would have progressed regardless of what the claimant was doing. 210 Kan. at 734, 738. *Boeckmann* is highly persuasive in evaluating Martin's case.

Similarly, a panel of this court denied compensation even though a claimant with prior back problems sustained a specific, identifiable injury, where the claimant was found to have encountered a

"personal risk" not related to his employment. See *Martin v. U.S.D. No. 233*, 5 Kan. App. 2d 298, 300, 615 P.2d 168 (1980). Our court noted, "Considering the history of claimant's back problems, it is obvious that almost any everyday activity would have a tendency to aggravate his condition, *i.e.*, bending over to tie his shoes, getting up to adjust the television, or exiting from his own truck while on a vacation trip." 5 Kan. App. 2d at 300.

Martin cites *Baggett v. B & G Construction*, 21 Kan. App. 2d 347, 900 P.2d 857 (1995), for support; however, the claimant in *Baggett* was awarded compensation after an assault by a coworker caused the claimant to fall into a hole located on the job site. *Baggett* did not deal with the aggravation of a preexisting condition, but addressed whether an assault stemming from personal, non-work-related matters is compensable when a hazard of the job site causes ultimate injury.

As pointed out by CNH, some of this decision rests on public policy grounds. It would breed inefficiency to allow workers with preexisting conditions such as cancer, respiratory disease, muscle and joint disease, and similar conditions to place the burden of their personal health care expenses on employers. Although compensation seems necessary when work conditions directly accelerate or aggravate these diseases, it is less warranted when the symptoms encountered would have occurred regardless of whether the claimant was so employed. Workers compensation should be reserved for persons who are injured on the job due to hazards specifically associated with that particular work, not for persons who come to an employer with a preexisting disease and suffer the inevitable consequences of that disease while they happen to be at work.

Martin did not suffer an injury that arose out of his employment with CNH. Therefore, the Board did not err in denying Martin's request for workers compensation benefits.

Affirmed.